[No. 611-2.    Division Two.    January 22, 1973.]

COLONIAL INVESTMENT COMPANY *et al., Appellants,* v.
LEONIE VIAL MACKENZIE *et al., Respondents.*

*R. W. Gibson* and *Kafer, Gissberg & Wilson,* for appellants.

*James D. Horton* and *Robert M. Schaefer* (of *Blair, Schaefer, Hutchison, Wynne, Potter & Horton*), for respondents.

PETRIE, J.—This is a dispute over the location of a boundary line dividing two parcels of land in Skamania County, each in section 6, township 1 north, range 6 E.W.M. Plaintiffs are the owners of land lying west of the line. Defendants own the land east of the line.

In 1877 one of plaintiffs' predecessors in interest and one of defendants' predecessors in interest became joint owners of a tract of land extending from the northern boundary of said section 6 and extending southward to the Columbia River. In 1883, having agreed upon a division of that tract, each gave the other a quitclaim deed to his property lying

on respective sides of a boundary line described as follows:

Commencing at a point on the north line of Section 6, Township 1 North, Range 6 E.W.M., lying 20 rods and 17 links west of the NE corner of the NE ¼ of said Section 6; thence running in a southeasterly direction keeping the center of the canyon to its mouth and continuing on the same course to the Cascade Road. Thence following the Cascade Road 19 rods and 15 links west; thence in a direct line to the Columbia River, taking a hollow ash stump (with a stake in the center) in the line.

Thereafter, in 1902 and 1908, correction deeds were executed by the then respective parties in interest. The latter deed, which provides the current boundary line, describes the line as follows:

Beginning at a point five chains and seventeen links west of the quarter post on the northern boundary of Section six in township one north of range six east Willamette Meridian, in Skamania County Washington, thence running in a southeasterly direction keeping the center of the canyon to its mouth and continuing on the same course to Cascade Road; thence following said Cascade Road west nineteen rods and fifteen links, thence south to the Columbia River to a stone marked L.

We note preliminarily that there are two essential differences between the two deeds: (1) the beginning point has been changed from the northeast corner of the section to the quarter post on the northern boundary of the section; and (2) the terminal monument has been changed from a hollow ash stump to a stone marked L. In all other respects, the calls are essentially the same in the 1908 deed as they were in the 1883 deed.

We note further that there are three surveying problems which must be resolved in order to properly retrace the path of the original surveyor who prepared the line: (1) establish the direction of the line as it comes out of the mouth of the canyon; (2) locate the Cascade Road which existed in 1883; and (3) locate the terminal monument designated in the 1908 deed. For purposes of resolving the issues presented by this appeal, we need only examine the

solutions to the first problem as presented by the contesting parties.

Plaintiffs' surveyor prepared his survey in 1967; defendants' surveyor in 1970. Except for some exhibits, to which we shall later refer, the only evidence presented to establish the direction of the course through the mouth of the canyon was the testimony of these two surveyors. The trial court accepted the course as established by defendants' surveyor. Plaintiffs have appealed to this court. We conclude that the defendants' surveyor misconstrued the call in the deed as a matter of law. Furthermore, the trial court's acceptance of the defendants' version of the call effectively, but erroneously, reformed the deed. This error has resulted in substantial error, detrimental to plaintiffs, in the remainder of the line created by entry of the decree. Accordingly, we reverse the decree and remand for new trial.

The call in both deeds provides—after ascertaining the point of beginning on the northern boundary of section 6: "thence running in a southeasterly direction keeping the center of the canyon to its mouth and continuing on the same course to the Cascade Road; . . ."

Both surveyors found the northern boundary quarter post. The defendants' surveyor, Mr. Mike Greenwood, however, chose not to run a traverse westerly from the quarter post a distance of 5 chains, 17 links (341.22 feet by surveyor's measure, gunter's chain). Instead, he actually commenced his survey by determining the "center line of the canyon." Mr. Greenwood established his "center line of the canyon" by plotting two points, 100 feet removed from each other, on the western side of the canyon at the toe of the slope and two other points, 100 feet removed from each other, on the eastern side of the canyon at the toe of the slope. Presumably, these four points were selected at locations which Mr. Greenwood considered the mouth of the canyon. He then bisected the trapezoid formed by these four points by apportioning the total distance 50 percent on the top and 50 percent on the bottom. This bisecting line he called the "center line of the canyon."

Mr. Greenwood then projected that "center line" south-easterly to a road which had been pointed out to him as the Cascade Road. He acknowledged a northwesterly projection of his "center line" would intersect the northern boundary line of section 6 at a point approximately 100 feet *east* of the north quarter corner—approximately 441 feet east of the point of beginning set forth in the 1908 deed. The result, of course, would favor the plaintiffs north of the mouth of the canyon, but disfavor the plaintiffs south of the mouth of the canyon.

We must examine whether or not Mr. Greenwood's method of ascertaining the "center line of the canyon"—and, therefore, the course of the line from the mouth of the canyon to the Cascade Road—followed the mandate of the 1883 and 1908 deeds. The cardinal principle guiding a surveyor who is running the lines of a previous survey is to follow in the footsteps of the previous surveyor. J. Grimes, *Clark on Surveying and Boundaries* § 280, at 300 (3d ed. 1959). A survey once having been made, even though erroneous in some details, vests property rights which are not to be lightly upset. *Rohrbach v. Sanstrom*, 172 Wash. 405, 20 P.2d 28 (1933); *Staaf v. Bilder*, 68 Wn.2d 800, 415 P.2d 650 (1966). A course or line given in a deed is presumably a straight line, and should not be deflected except to conform to the intention of the parties. 6 J. Grimes, *Thompson on Real Property* 632 (1962 Replacement). 1 R. Patton and C. Patton, *Land Titles* § 125, at 323 (2d ed. 1957). In construing a written instrument, it is the duty of the court to give effect to each and every part thereof, if that can be done. If there are flat contradictions in the text, then the alternative is either to hold that the intention of the maker cannot be determined or to select that one of the conflicting interpretations to which the instrument is susceptible which, upon a consideration of the whole matter, appears most likely to reflect the maker's intent. *In re Estate of Molke*, 198 Wash. 6, 86 P.2d 763 (1939).

Armed with these general principles, let us examine the

call in the deed which proceeds through the canyon. It seems apparent to us that the intention of the parties to the 1883 deed, as well as the 1908 deed, was clearly expressed: (1) They developed a line to run from the northern boundary of their property, and designated a point from which to start that line; (2) they chose as the other point on that line, determinative of the course of the line, the center of the mouth of the canyon; (3) they intended that from the mouth of the canyon to the Cascade Road the line shall be a straight line; and (4) they intended that through the course of the canyon proper, the line should keep the center of the canyon. (We might note parenthetically that as a practical matter it is extremely doubtful that the parties had access to a topographical map. Accordingly, "keeping the center of the canyon", in all probability, merely meant following the creek.[1] This latter has no real significance, however, to this action.)

How well did Mr. Greenwood's survey follow the path of the original surveyor? Clearly, it did not purport to retrace the steps we have outlined; nor did it reestablish the line called for in the deed. Acceptance of the Greenwood line from the mouth of the canyon to the Cascade Road would require reformation of the deed, which is not warranted.

The intersection of the diagonals of Mr. Greenwood's trapezoid, if the four points were properly chosen, may well have established the center of the mouth of the canyon. However, the bisector of the parallel sides of the trapezoid in no way established the "center line of the canyon" as set forth in the call of the deed. Plaintiffs' surveyor stated that he followed the call of the deed as we interpret it. However, it is not our function to determine factually how faithfully his survey actually followed the call. That is

---

[1] The field notes of the surveyor who originally ran the northern section line indicate the creek crossed the northern section line 7.5 chains (495 feet) west of the quarter post. This is supported by a topographical map introduced as an exhibit. However, the point of beginning in the 1908 deed is quite explicitly designated. Hence there is no necessity to move the point of beginning westward to the creek.

a fact question which must be decided upon retrial of all the issues.

We do not reach the two major factual controversies— which road was the Cascade Road referred to in both deeds and which stone marked the line to the Columbia River in the 1908 deed? We leave those factual determinations to the trier of fact at the new trial which must be granted.

Reversed and remanded for new trial.

PEARSON, C.J., and ARMSTRONG, J., concur.