[Nos. 1390-2; 1497-2.    Division Two.    January 30, 1976.]

HANS KRONAWETTER, ET AL, *Appellants*, v. TAMOSHAN, INC., ET AL, *Respondents*.

*Paul Sinnitt*, for appellants.

*Ernest L. Meyer, Harold S. Fardal*, and *Keller, Rohrback, Waldo, Moren & Hiscock*, for respondents.

PEARSON, J.—This is a boundary dispute involving owners of undeveloped property, some of it waterfront property, in Thurston County. The dispute arises from an apparent 40-foot shortage on the ground compared with the distance shown on Sea View Park plat, recorded in 1895 by Emma and John Chaplin.[1] Sea View Park plat is located in Sections 21 and 22, Township 19 North, Range 2 W.W.M. in Thurston County. The Chaplins purported to plat 100 acres into lots, blocks and streets. The plat's north-south measurement is 100 rods or 1,650 feet. Lots 7 through 10 block 17, as they appear on the plat, each measure 122.5 feet on their eastern borders. Acadia Street, running east and west, bounds the plat on the north, and is depicted as being 40 feet wide. The parties agree the Chaplins intended the northern boundary of Sea View Park plat to coincide with the north line of Burntrager Donation Claim No. 42. The Burntrager line, however, is not depicted on the plat with respect to the plat's northern boundary.

When Acadia Street is included in the area platted, it becomes apparent more land was platted than platters owned, since the plat, when located on the ground, is 40 feet short when measured from north to south. If Acadia Street is considered surplusage and not a part of the area the Chaplins intended to plat, the plat on the ground encompasses exactly the area the Chaplins possessed to plat, 100 acres.

The plaintiff is the owner of lots 2, 3, 4, 5, 7, and 8 of block 17, lots 2 through 9 of block 18, and lots 6 through 9 of block 19. The defendant Helen Jacobs owns lots 1 and 10 in block 17, lots 1 and 10 in block 18, and lot 10 in block 19. Her property is located directly to the north of the plaintiff's.[2]

The defendant Tamoshan, Inc., owns substantial property directly south of the plaintiff's land. The Tamoshan prop-

---

[1] Sea View Park plat has since been vacated. However, all conveyances of property represented by the plat have been made with reference to the plat.

[2] See illustration.

erty involved in this dispute is lot 6 in block 17, lots 1 and 10 in block 22, lots 1 and 10 in block 21, and lot 10 in block 20. Other property owners within Sea View Park are not parties to this action.

The record indicates the plaintiff, and his predecessor in title to all plaintiff's lots except lot 7 in block 17, located

their boundaries with reference to a survey which included Acadia Street within the area platted. After allowing 40 feet for the width of Acadia Street, the northwest and southwest corners of the lots in block 17 were located by measuring from the southern boundary of Acadia

Street. The defendant Tamoshan, on the other hand, located its boundaries with reference to a survey which excluded Acadia Street from the area platted.

No real dispute with reference to the location of the common boundary between plaintiff's and Tamoshan's property arose until the plaintiff discovered construction work being conducted on what he contends is lot 7 block 17. It then became apparent that Tamoshan was claiming its northern boundary to be 40 feet north of the point plaintiff considered his southern boundary.

Plaintiff brought suit against Tamoshan to quiet title to the 40-foot strip, on the theory that the north line of Acadia Street coincided with the north line of the plat, contending any deficiency should be adjusted by reducing the size of the lots located at the southern end of the plat. He also claimed title to the disputed strip under various legal principles, including: adverse possession, estoppel, old established boundaries, and boundaries established by a common grantor. Tamoshan counterclaimed to quiet title to the 40-foot strip and for an order requiring the plaintiff to remove all encroachments he had placed thereon.

Assuming the trial court would find that Acadia Street was within the area platted, and in the event the trial court rejected his position with respect to the location of his common boundary with Tamoshan, plaintiff included Helen Jacobs as an additional defendant to enable the trial court to reestablish all the east-west plat boundaries on a proportionate basis, even though he conceded he had no dispute with Jacobs regarding their common boundary.

The suit against Jacobs was dismissed at the end of plaintiff's case. As between the plaintiff and Tamoshan, the trial court found that Acadia Street was not part of the plat and the survey which Tamoshan had used in locating its boundaries was correct. The court also found the evidence insufficient to prove the plaintiff or his predecessors had acquired any title or interest to any portion of the disputed 40 feet by adverse possession, parol agreement and ac-

quiescence, mutual agreement and acquiescence, location by common grantor, or by estoppel.

After post-trial motions, plaintiff appeals from the judgments in favor of Jacobs and Tamoshan and from the granting of Tamoshan's counterclaim.

The trial focused on the obvious deficiency in the map filed as part of the Sea View plat. None of the lines or corners of the map was identified as being either section lines or corners or donation claim lines or corners.

█ We start with the general proposition that the courts should ascertain and carry out the intention of the original platters. *Staaf v. Bilder*, 68 Wn.2d 800, 415 P.2d 650 (1966). Plaintiff's surveyor, Patrick J. Byrne, was of the opinion that Acadia Street was intended to be included within the plat. His opinion was based solely on the statement contained in the dedication: "do hereby donate and dedicate to the public for use forever all the streets as shown upon said plat." From the premise that Acadia Street was shown on the map, Mr. Byrne believed the dedicatory language made the north boundary of Acadia Street correspond with the northern boundary of the Burntrager Donation Claim and the section line. This opinion did not adequately account for either the acreage or dimensions of the property which the platters also described in the dedication, which, in fact, they owned.

Defendant's surveyor, John L. Bracy, on the other hand, took the position that the absence of any identifying section lines or donation claim lines on the plat map indicated that the map was nothing more than the draftman's subdivision of the property. He concluded that the only way to reconcile the map with the property the Chaplins actually owned (100 acres) and the distance (100 rods) described in the dedication was to treat Acadia Street as surplusage and not intended to be within the platted property. This interpretation also coincided with three prior surveys which had been done, dating back to 1932, and was consistent with the subdivision platted to the immediate south of the subject plat.

The trial court's acceptance of defendant's version of the dispute is supported by substantial evidence. We should not disturb the trial court's determination. *Staaf v. Bilder, supra.*

■ Furthermore, in *Colonial Inv. Co. v. Mackenzie,* 8 Wn. App. 264, 267, 505 P.2d 834 (1973) we stated:

> In construing a written instrument, it is the duty of the court to give effect to each and every part thereof, if that can be done. If there are flat contradictions in the text, then the alternative is either to hold that the intention of the maker cannot be determined or to select that one of the conflicting interpretations to which the instrument is susceptible which, upon a consideration of the whole matter, appears most likely to reflect the maker's intent.

The trial court, wisely we think, accepted the interpretation consistent with the size of the parcel the Chaplins had the right to plat. Most likely the platters did not intend to plat that which they did not own.

We think the trial court was also sound in its disposition of the other legal theories advanced in support of plaintiff's claim to the 40-foot strip of land. Our review of the record persuades us that the testimony of John L. Bracy supports the trial court's findings that plaintiff did not establish title by "adverse possession, by parol agreement and acquiescence, or by estoppel."

With reference to adverse possession, it is clear from the testimony of Mr. Bracy that the property along the disputed strip during periods of the claimed adverse use was wild and undeveloped.

■ The estoppel argument stems from the testimony of plaintiff that defendant Tamoshan's president knew that plaintiff was building the bulkhead on the disputed strip, and did nothing to notify plaintiff of the dispute. However, Bracy testified that he advised plaintiff of the 40-foot discrepancy long before construction of the bulkhead was commenced. The trial court accepted this testimony and in so doing rejected the estoppel contention. There was no fulfillment of the estoppel requirement of the action in

reliance upon some admission, statement, or act of the adverse party. *See Thomas v. Harlan*, 27 Wn.2d 512, 178 P.2d 965, 170 A.L.R. 1138 (1947).

The common grantor theory was rejected by the trial court on the basis that this theory was not pursued at trial. The testimony did show that a common grantor (Faulkner) was involved with reference to lots 6 and 7 of block 17. However, the common grantor was not called as a witness and the only testimony concerning the boundary between these lots came from plaintiff's predecessor in title, Walter Gerwels. Gerwels testified as to a dispute between himself and Faulkner over this boundary. For a boundary to be established by common grantor it must plainly appear that the land was sold and purchased with reference to the line, and that there was a meeting of the minds as to the identical tract of land to be transferred by the sale. *Thompson v. Bain*, 28 Wn.2d 590, 183 P.2d 785 (1947). No such showing was made here.

Finally, it is not disputed that the boundary between plaintiff's property and that of the defendant Jacobs has long been fixed by mutual acquiescence. The trial court was correct in dismissing the suit as to Jacobs. *Lamm v. McTighe*, 72 Wn.2d 587, 434 P.2d 565 (1967).

Judgment is affirmed in all respects.

PETRIE, C.J., and REED, J., concur.

Petition for rehearing denied March 1, 1976.