[No. 5082-0-II.   Division Two.   July 5, 1983.]

MARVIN WINANS, ET AL, *Respondents,* v. HARVEY
ROSS, ET AL, *Appellants,* DONALD D.
CORLETT, ET AL, *Respondents.*

*David Johnson,* for appellants.

*Gary Colley,* for respondents.

WORSWICK, J.—Before us here is a boundary dispute
between owners of two adjacent lots in Clallam County. See
map.

The Corletts purchased the east and west lots in 1957
and 1958 respectively. When they bought the west lot, it
was fenced on four sides. They believed the fences marked
the boundaries of the west lot. In 1961, they built a house

STRAIT OF JUAN DE FUCA

TOP OF BLUFF

fence

67.98

CHAPMAN
↓ (1958)
CORLETT
↓ (1970)
YOUNG
↓ (1977?)
ROSS

HAZLETT
↓ (1957)
CORLETT

↓ (1978)

WINANS

WEST LOT

EAST LOT

N

54.60

189.06

FINN HALL ROAD

on the east lot and a driveway from the house to Finn Hall Road. The driveway is adjacent to the fence between the two lots. They also built an irrigation pond a short distance to the east of the driveway, partially on the disputed strip. In 1970, they sold the west lot to the Youngs, but did not mention the boundaries of the lot. The Youngs sold the west lot to the Rosses in 1977. In 1978, the Corletts sold the east lot to the Winans. Shortly after buying the lot, the Winans had it surveyed. Their survey showed that the west boundary line of their lot was approximately 60 feet east of the fence. After this survey, the Winans brought suit to quiet title to the strip of land between their survey boundary and the fence line.

The trial court found:[1]

### III

That the existing fenceline on the West boundary of the plaintiffs property and the East boundary of the defendants property was established by the common grantor, Corletts, as the true boundary between the plaintiffs and defendants properties and both plaintiffs and defendants properties were purchased with reference thereto.

The court entered judgment, based on the common grantor doctrine, quieting title to the disputed strip in the Winans. The Rosses appeal. Their principal contention is that the trial court erred in entering the above finding. We affirm.

■ A grantor who owns land on both sides of a line he has established as the common boundary is bound by that line. *Fralick v. Clark Cy.*, 22 Wn. App. 156, 589 P.2d 273 (1978). The line will also be binding on grantees if the land was sold and purchased with reference to the line, and there was a meeting of the minds as to the identical tract of land to be transferred by the sale. *Kronawetter v. Tamo-*

---

[1]Finding of fact III was labeled a conclusion of law by the trial court. However, it is clearly a finding of fact because it is an assertion that a phenomenon has happened, independent of any assertion as to its legal effect. *See Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 584 P.2d 968 (1978). Therefore, we have reviewed the erroneously labeled conclusion as a finding of fact. *See Smith v. Breen*, 26 Wn. App. 802, 614 P.2d 671 (1980).

*shan, Inc.,* 14 Wn. App. 820, 545 P.2d 1230 (1976). The common grantor doctrine involves two questions: (1) was there an agreed boundary established between the common grantor and the original grantee, and (2) if so, would a visual examination of the property indicate to subsequent purchasers that the deed line was no longer functioning as the true boundary? *Fralick,* 22 Wn. App. at 160.

The Rosses contend there was no proof the Corletts and Youngs agreed the fence would be the boundary, because the record shows they did not talk about the boundaries at the time of sale. We disagree. A formal, or specific, or separate contract as to the boundary line between the parties is not necessary. *Thompson v. Bain,* 28 Wn.2d 590, 183 P.2d 785 (1947). An agreement or meeting of the minds between the common grantor and original grantee may be shown by the parties' manifestations of ownership after the sale. *See Thompson v. Bain, supra.* There is substantial evidence in the record that the Corletts and Youngs agreed the fence was the boundary between the two lots.

In 1956, Ira Chapman surveyed the west lot and built the fence on what the survey revealed to be the east boundary line. The Corletts rebuilt the fence and did not change its location because they believed the fence marked the boundary. Both parties treated the fence as the boundary after the Youngs bought the lot. The Corletts continued to use the driveway and pond on the east side of the fence as their own property. The driveway and part of the pond are within the disputed strip. A tenant of the Youngs obtained the Corletts' permission to use the pond to irrigate the west lot. When the Youngs sold the lot to the Rosses, the driveway and pond were not mentioned as part of the property on the listing agreement. The realtor who handled the sale testified that the driveway and pond would normally be mentioned in the listing agreement if they were part of the property being sold.

The Rosses contend the trial court erred in finding the east and west lots were purchased with reference to the

fence as the boundary. They claim the record shows both lots were purchased by legal description only; therefore, neither the Rosses nor the Winans agreed the fence was the boundary. We disagree.

It is not necessary that every grantee, from the time the boundary is determined, should himself agree that that was the boundary line. *Atwell v. Olson*, 30 Wn.2d 179, 190 P.2d 783 (1948). Once an agreed boundary is established between the common grantor and the original grantee, it is binding on subsequent purchasers if a visual examination of the property indicates the deed line is no longer functioning as the true boundary. *Fralick v. Clark Cy., supra.* The issue, then, is whether substantial evidence supports the conclusion that the fence provided notice to subsequent purchasers that it was the boundary. There is such substantial evidence in this case.

Mr. Winans testified he thought the fence was the boundary line because, when he viewed the east lot, the fence had realtor's flags on it, the property on either side of the fence was being used for different purposes, and he viewed the lot from the driveway. Mr. Ross testified he viewed the west lot with a realtor who told him the lot was approximately 10 acres, and measured approximately 1,300 by 330 feet. The west lot is fenced on all four sides and measures 1,300 by 330 feet. The realtor who sold the west lot to the Rosses did not mention the pond or driveway as part of the lot.

Affirmed.

PETRICH, C.J., and PETRIE, J., concur.