[No. 15908–9–I.   Division One.   June 29, 1987.]

J. M. SCHULTZ, *Respondent,* v. ALBERTA PLATE,
ET AL, *Appellants.*

*Alberta Plate* and *Gary Franco,* pro se.

*Randy M. Boyer* and *Linde, Boyer & Mashita, P.S.,* for respondent.

REVELLE, J.*—Alberta Plate and Gary Franco (Plate–Franco) appeal the determination of the property line boundary between their property and that of Jordan Marsh Schultz. A barn, which was built in 1920 and is now the residence of Plate–Franco, and a recently built rock wall were found to be encroaching at an angle on the Schultz property. A mandatory injunction was issued for removal of the encroachment. By way of amended appeal Plate–Franco also contests the issuance of the injunction. We reverse and remand for a determination of the boundary consistent with this decision.

---

*This appeal was heard by a Supreme Court Justice, a Superior Court Judge, and a retired Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

In 1915 John Mattson owned 10 acres of government lot 3 which lay south of the county road. He also owned a 5–acre parcel of government lot 3 which lay north of the other parcel and was subject to a deeded 30–foot easement for a county road. In 1920 a barn was built on the 5–acre parcel considerably north of the county road, and at some time a fence was constructed near the barn as well. In 1920 John Mattson deeded both the 5– and 10–acre parcels to his wife Anna. In 1952 the location of the western boundary of the 10–acre parcel and the eastern boundary of another parcel, not involved in this action, was determined by litigation. In that quiet title action the judgment of the court incorrectly decreed the description of the south 10–acre–parcel to be:

All that portion of Government Lot Three (3) of Section Twenty (20) in Township Thirty–four (34) North Range One (1) West WM. *lying South of the county road as it now exists and as the South boundary of said road is defined and marked by a fence extending along said road from the Southwest Corner of Government Lot Five (5) said Section,* and extending in West and Northerly direction to its intersection with the Meander Line.

(Italics ours.) As a result the legal description in the Kane to Schultz sale reads as follows:

That portion of Government Lot 3, Section 20, Township 34 North [*sic*] Range 1, W.W.M., *lying south of County Road as it existed March 18, 1952, and as the south boundary of said County Road was defined on that date by a fence extending along said road, from the South-west corner of Government Lot 5, in said Section* and extending in a West and Northerly direction to its inter-section with the meander line . . .

(Italics ours.) At the time of the action in 1952, that court was either unaware of, or did not use, an 1898 survey showing the true southern boundary of the north lot and the adjoining northern boundary of the south lot as the center of the county road.[1] The court's description erred by assuming that the southwest corner of government lot 5

---

[1]Because of the 1952 error, ownership of a 15–foot strip of land, the southern half of the county road, is in question. When the trial court reforms the deeds in

was in an extended line from the south boundary of the county road when in fact it was in line with the center of the county road.

In 1952 Anna Mattson died, leaving properties as part of her estate. Anna's daughter, Elvee Mattson Van de Putte, was appointed executrix and she and her sisters received these properties as part of their inheritance. The south 10–acre parcel was sold to Lucile Kane in 1953, and by Kane to Schultz in 1958. The Kane–Schultz sale used the above quoted, yet incorrect, boundary description. Schultz then held title to the south 10 acres described with the northern boundary on the southern edge, rather than the center, of the county road. The 5–acre parcel was kept by Elvee Van de Putte and her sisters until 1969 when she quitclaimed her interest to her son Eugene who then held the parcel as a tenant in common with his aunt Elna and his cousin Carol, each holding an undivided one–third.

In 1972 that property was partitioned; the northernmost 165–foot parcel went to Eugene, the next 165 feet to Carol and the south 198–foot lot to Elna. The 198–foot lot was larger to account for a 30–foot easement for the county road because of the incorrect assumption that the north 5–acre tract's border with the south 10–acre tract was on the south side of the county road. The other 3 feet was added to the southernmost lot by agreement of the parties. In 1975 Elna sold her portion to Schultz. Carol sold her portion to Milan who in turn sold to Plate–Franco in 1979.

The fence included in the legal description was removed and the county road was plowed under or covered over with clover by Schultz sometime before this action commenced. The common grantor, Elvee Van de Putte, assumed that the boundary line began south of the county road instead of the center of the road. This assumption would place the barn and adjoining rock wall entirely on the property now claimed by Plate–Franco.

---

accordance with this opinion, it should also determine ownership of the 15–foot strip, which may include property owners who are not parties in this action.

A survey was done in 1980–1981 to establish the southwest corner of government lot 5. In 1983, an additional survey was done to determine the property line boundary between Plate–Franco and Schultz. As a result of the 1983 survey, the boundary between Schultz and Plate–Franco was found to extend 5 feet through a portion of the Plate–Franco barn/residence and part of the rock wall nearby. Negotiations to resolve the dispute between the parties as to what should be done about the mistaken boundary situation were unsuccessful. Schultz then sued Plate–Franco to quiet title.

After trial, the court issued an oral opinion, written memorandum decision, a second oral opinion, findings of fact and conclusions of law, an original judgment and decree and an amended judgment and decree. All of these were based on a correct statement of the law which was set forth in the memorandum decision. We quote as follows:

> The only theory upon which Defendants' claim to the property south of the survey line can be based is the so–called common grantor theory.
>
> For the common grantor theory to apply,
>
> ". . . for a boundary line established by a common grantor to become binding and conclusive on grantees it must plainly appear that the land was sold and purchased with reference to such line, and that there was a meeting of minds as to the identical tract of land to be transferred by the sale." See Thompson v. Bain (28 Wn. (2d) 590) [183 P.2d 785 (1947)].
>
> However,
>
> ". . . it is not necessary that every grantee, from the time of the inception of the construction and the determination of the boundary, should himself agree that that was the boundary line." See Atwell v. Olson (30 Wn. (2d) 179) [190 P.2d 783 (1948)].
>
> As stated in Winans v. Ross (35 Wn. App. 238) [666 P.2d 908 (1983)],
>
> "It is not necessary that every grantee, from the time the boundary is determined, should himself agree that that was the boundary line. Atwell v. Olson, 30 Wn.2d 179, 190 P.2d 783 (1948). Once an agreed boundary is established between the common grantor and the orig-

inal grantee, it is binding on subsequent purchasers if a visual examination of the property indicates the deed line is no longer functioning as the true boundary. Fralick v. Clark cy., [*sic*] supra. The issue, then, is whether substantial evidence supports the conclusion that the fence provided notice to subsequent purchasers that it was the boundary."

See also Fralick v. Clark County 22 Wn. App. 156, [589 P.2d 273(1978)] where the Court states,

". . . the question of applicability of the common grantor theory presents two problems: (1) was there an agreed boundary established between the common grantor and original grantee, and (2) if so, *would a visual examination of the property indicate to subsequent purchasers that the deed line was no longer functioning as "true" boundary?*"

The factual issue here is whether a visual inspection by Plaintiff would reveal that the deed line was not the true boundary or that there had been established by prior conduct, a boundary line.

Then follows the trial court's analysis of the facts found:

In the Court's oral opinion, it stated that it felt that when the property was divided in 1972, the (common grantor) parties measured distances, located and agreed upon a boundary which would leave the barn on the middle piece. In 1975 when the Plaintiff purchased his property, the only evidence of a boundary was the location of the barn and remnants of an old fence. At one time, [the] property was all one farm, including Plaintiff's property and the five acres north of it.

The Defendants knew that the boundary was 198 feet north of the Government Lot corner but did not know where the Government Lot corner was located.

The Court stated in its oral opinion that the location of the barn should have put the Plaintiff on inquiry as to the boundary line agreed upon previously. On reflection, however, the Court now finds that while the prior parties may have intended the barn to be on the middle (Defendants') lot, they really did nothing outside of placing a rock along the road. While the barn and old fence remnants were there, they may well have appeared to be just remnants of an old abandoned farm operation and not of the existence of an agreed boundary line. While the Court is reluctant to change its decision, after read-

ing the cases and reconsidering the testimony, the Court cannot find that the Defendants have proved that an inspection of the property could have given notice of the establishment of an agreed boundary.

■ We agree with the trial court's initial determination stated in its oral opinion that the location of the barn should have put Schultz on inquiry notice as to the boundary line agreed upon previously. The principle of *Atwell v. Olson,* 30 Wn.2d 179, 184, 190 P.2d 783 (1948), which was cited with approval in *Winans v. Ross,* 35 Wn. App. 238, 242, 666 P.2d 908 (1983), is that it is not necessary for every grantee, from the time the boundary was initially agreed to and determined by a common grantor and his original grantees, to himself agree as to the location of the boundary line.

Once an agreed boundary is established between the common grantor and the original grantee, it is binding on subsequent purchasers if a visual examination of the property indicates the deed line is no longer functioning as the true boundary. The issue, then, is whether substantial evidence supports the conclusion that the fence provided notice to subsequent purchasers that it was the boundary.

(Citation omitted.) *Winans,* at 242.

A purchaser/grantee, "may not now be heard to say that [he] failed to see that which was plainly visible and which could have been ascertained upon inquiry." *Atwell,* at 184 (quoting *Skoog v. Seymour,* 29 Wn.2d 355, 187 P.2d 304 (1947)).

We therefore hold the trial court erred in applying the facts to the law when it departed from its original decision that the barn and fence remnants were sufficient to put the purchaser on notice of an agreed boundary. It is unlikely that a structure, such as the barn, would intentionally straddle a boundary line. Schultz was put on notice by the very existence of the structure and could have ascertained the agreed boundary by inquiry. The common grantor and

grantees had a court decreed reason[2] to believe the starting point for the 5–acre parcel was on the south side of the road. This was supported by the testimony of the grantor and the grantees. Their belief that the barn was part of the middle piece of the three resulting properties, combined with the principles of law outlined above, determine that we must remand for a reformation of the deeds.

For the foregoing reasons it is necessary that the mandatory injunction issued by the trial court, which ordered removal of the encroachment, be dissolved. Further, no resolution of the other issues presented need be addressed by this court.

CALLOW and CHAN, JJ. Pro Tem., concur.

Reconsideration denied December 8, 1987.

---

[2]Mattson v. Hanson, San Juan County cause 1715 (1952). As we have stated, this decree was in error, but still binding on the grantor and grantees.