[No. 34182-1-I.   Division One.   September 11, 1995.]

WANDA LEVIEN, *Respondent*, v. AL FIALA, ET AL., *Appellants*.

*Thomas C. McCarthy*, for appellants.
*Wanda Levien*, pro se.

SEINFELD, J. — Albert J. and Shirley M. Fiala, holders of an unrecorded quit claim deed to a disputed strip of property, appeal a judgment quieting title to the property in the name of Wanda Levien, the adjacent property owner. Levien cross-appeals the trial court's dismissal of her damage claims. Holding that Levien was a good faith purchaser for value and that the common grantor doctrine does not apply, we affirm.

## FACTS

In 1964, Ralph and Beverly Riddell purchased a piece of property described as Lot 25, Block 2, Lake Hills 17, in King County, Washington. In the 1970s, the Riddells constructed a wood fence that extended about thirty feet from a point about five feet east of the northwest corner of Lot 25 along the boundary between it and the neighboring lot. A rockery extended from the south end of the fence to the southwest corner of Lot 25.

The Fialas purchased the adjacent lot, Lot 23, in February 1985. In May 1985, the Fialas built a chain link fence immediately west of the wood fence. This fence encroached

on Lot 25 and cut off a 175-square-foot triangular strip of land, approximately seventy feet in length and five feet at its point of greatest width.

On March 10, 1986, the Riddells executed a quit claim deed to the Fialas for the triangular strip of property; the Fialas did not record the quitclaim deed. Nine days later, the Riddells sold Lot 25 to Levien. However, they did not advise her about the quitclaim deed. Nor did the statutory warranty deed Levien received on June 6, 1986, show the unrecorded quitclaim deed. Ralph Riddell testified at trial that he did not tell Levien about the quitclaim deed because he had assumed that it would be reflected in the statutory warranty deed for the remainder of the property.

After Levien discovered the discrepancy between the boundary as described in the statutory warranty deed and the location of the chain link fence, she brought the action against the Fialas to quiet title to the triangular strip and for damages for trespass. The Fialas cross-claimed to quiet title to the strip based on the unrecorded quitclaim deed and on their claim of adverse possession.[1]

The trial court found that when Levien first inspected the property before purchasing it, the chain link fence extended across the entire length of the west end of Lot 25 and that it was visible both between the trees and above the wood fence for about a foot. The trial court also found that the chain link fence was sufficient to prompt a reasonable person to conclude that the owners of Lots 23 and 25 considered the chain link fence to be the boundary between their properties. Because Levien had no knowledge that there was a discrepancy between the boundary of Lot 25 as shown on the plat and the boundary suggested by the chain link fence, however, the trial court found that she did not have sufficient facts to cause a reasonable person to inquire as to whether there was such a discrepancy. The trial court therefore found that Levien took

---

[1]The Fialas do not challenge the trial court's finding that they did not establish the ten years of adverse use necessary to establish adverse possession.

title to Lot 25 in good faith for value, i.e., that she was a bona fide purchaser.

The trial court entered judgment quieting title to the triangular strip in Levien and directing the Fialas to remove any portion of the chain link fence and associated concrete and debris located on Lot 25; it denied Levien's claim for damages on the ground that she had failed to present evidence of such damages.

## I

On appeal, the Fialas challenge (1) the trial court's holding that Levien was a good faith purchaser for value and (2) its finding that Levien did not have facts sufficient to put her on inquiry notice as to whether there was a discrepancy between the line marked by the chain link fence and the boundary line as marked on the plat.

■ The bona fide purchaser doctrine provides that a good faith purchaser for value, who is without actual or constructive notice of another's interest in real property purchased, has a superior interest in the property. *Tomlinson v. Clarke*, 118 Wn.2d 498, 500, 825 P.2d 706 (1992) (citing *Glaser v. Holdorf*, 56 Wn.2d 204, 209, 352 P.2d 212 (1960)).

> "[[N]otice] need not be actual, nor amount to full knowledge, but it should be such 'information, from whatever source derived, which would excite apprehension in an ordinary mind and prompt a person of average prudence to make inquiry.' . . . It follows, then, that it is not enough to say that diligent inquiry would have led to a discovery, but it must be shown that the purchaser *had, or should have had, knowledge of some fact* or circumstance which would raise a duty to inquire."

*Paganelli v. Swendsen*, 50 Wn.2d 304, 308, 311 P.2d 676 (1957) (quoting Daly v. Rizzutto, 59 Wash. 62, 65, 109 P. 276 (1910)). Or, as another court has stated the rule:

> "It is a well-settled rule that where a purchaser has knowledge or information of facts which are sufficient to put an ordinarily prudent man upon inquiry, and the inquiry, if fol-

lowed with reasonable diligence, would lead to the discovery of defects in the title or of equitable rights of others affecting the property in question, the purchaser will be held chargeable with knowledge thereof and will not be heard to say that he did not actually know of them. In other words, knowledge of facts sufficient to excite inquiry is constructive notice of all that the inquiry would have disclosed."

*Miebach v. Colasurdo*, 102 Wn.2d 170, 175-76, 685 P.2d 1074 (1984) (quoting *Peterson v. Weist*, 48 Wash. 339, 341, 93 P. 519 (1908)).

Persons cannot be bona fide purchasers if they

refuse to pursue inquiry, to which, were [they] honest and prudent, the knowledge [they have] would clearly send [them]. It will not do for a purchaser . . . to rely on the interested representation of the seller of land that a suspicious circumstance does not concern the title.

*Meibach*, 102 Wn.2d at 177 (quoting *Mann v. Young*, 1 Wash. Terr. 454, 463 (1874)). What makes an inquiry a duty is "such a visible state of things as is inconsistent with a perfect right in him who proposes to sell." *Paganelli*, 50 Wn.2d at 308 (quoting *Bernard v. Benson*, 58 Wash. 191, 196, 108 P. 439 (1910)). A circumstance that would lead a person to inquire, however, is only notice of what reasonable inquiry would reveal. *Paganelli*, 50 Wn.2d at 309.

██ ██ Whether a person is a bona fide purchaser is a mixed question of law and fact. *Miebach*, 102 Wn.2d at 175 (citing *Hudesman v. Foley*, 73 Wn.2d 880, 889-91, 441 P.2d 532 (1968)); *Peoples Nat'l Bank v. Birney's Enters., Inc.*, 54 Wn. App. 668, 674, 775 P.2d 466 (1989) (what a purchaser knew is a question of fact but the legal significance of what he knew is a question of law). A bona fide purchaser of an interest in real property is entitled to rely on record title; the protection afforded him by the real property recording statute, RCW 65.08.070,[2] is unaffected by the vendor's lack of good faith or by matters of which

---

[2]RCW 65.08.070 provides in pertinent part:

the vendor has notice. *Hendricks v. Lake*, 12 Wn. App. 15, 20-21, 528 P.2d 491 (1974), *review denied*, 85 Wn.2d 1004 (1975).

■ Parties who delay recording their deeds to property until after another has recorded a deed to the same property have the burden of proving actual or constructive notice of their interest in property by the other, and if they fail to do so, their prior conveyance is void as against that party by virtue of RCW 65.08.070. *Paganelli*, 50 Wn.2d at 308. On the other hand, recording of the earlier interest provides constructive notice. *Tomlinson*, 118 Wn.2d at 500 (citing *Kendrick v. Davis*, 75 Wn.2d 456, 464, 452 P.2d 222 (1969)).

Here, it is undisputed that the quitclaim deed for the disputed strip of property was unrecorded. The issue thus becomes whether the presence of the chain link fence when Levien inspected the property was sufficient notice of the boundary change to permit the court to quiet title in the Fialas, notwithstanding their failure to record the quit claim deed. As noted above, the trial court found that the chain link fence was sufficient to prompt a reasonable person to conclude that the owners of Lots 23 and 25 considered the fence the boundary between their properties.

The trial court, however, separated this finding from the question whether the fence's presence was sufficient to put a person of average prudence on inquiry notice as to a possible discrepancy between it and the boundary shown on the plat. Here, the evidence was sufficient for the trial court to find that Levien lacked the information that would put a reasonable person on inquiry notice and, thus, for it to conclude that Levien was a good faith purchaser

A conveyance of real property . . . may be recorded in the office of the recording officer of the county where the property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser or mortgagee in good faith and for a valuable consideration from the same vendor . . . of the same real property or any portion thereof whose conveyance is first duly recorded.

for value entitled to the protection of Washington's recording statute.

██ In arguing the sufficiency of the fence to put Levien on notice of the boundary change, the Fialas rely primarily on cases applying the common grantor doctrine. These cases hold that where an agreed boundary was established between a common grantor and the original grantee, and a structure has been erected to mark that boundary that is sufficient to indicate to subsequent purchasers that its purpose is to demarcate the boundary line, that boundary is binding on subsequent grantees.[3] *See, e.g., Winans v. Ross*, 35 Wn. App. 238, 240-41, 666 P.2d 908 (1983); *Fralick v. Clark County*, 22 Wn. App. 156, 159, 589 P.2d 273 (1978), *review denied*, 92 Wn.2d 1005 (1979). A formal or specific agreement is not required. *Winans*, 35 Wn. App. at 241. Rather, agreement or meeting of the minds between the common grantor and the original grantee may be shown by the parties' manifestations of ownership after the sale. *Winans*, 35 Wn. App. at 241.

The Riddells did originally own both the strip of property cut off by the chain link fence and Lot 25. Thus, literally, they are "grantor[s] who own[ed] land on both sides of a line [they] established." *Winans*, 35 Wn. App. at 240. Nonetheless, focusing only on that fact oversimplifies the doctrine and overlooks the policy concern underlying the doctrine.

---

[3]The common grantor doctrine has been explained as follows:

"*Location by Mutual Grantor.* A practical location made by the common grantor of the division line between the tracts granted is binding on the grantees who take with reference to that boundary. The line established in that manner is presumably the line mentioned in the deed, and no lapse of time is necessary to establish such location, which does not rest on acquiescence in an erroneous boundary, but on the fact that the true location was made, and the conveyance in reference to it. However, for a boundary line established by a common grantor to become binding and conclusive on grantees it must plainly appear that the land was sold and purchased with reference to such line, and that there was a meeting of minds as to the identical tract of land to be transferred by the sale."

11 C.J.S. 651 (quoted with approval in *Thompson v. Bain*, 28 Wn.2d 590, 591-92, 183 P.2d 785 (1947) and *Strom v. Arcorace*, 27 Wn.2d 478, 481, 178 P.2d 959 (1947)).

The common grantor doctrine recognizes the original grantee's good faith reliance on the boundary description provided by the common grantor who originally owned both lots in their entirety and thus had it completely within his power to determine the location of that boundary. *See Thompson*, 28 Wn.2d at 592-93. It is for this reason that subsequent grantees of the common grantor are bound by the location of that boundary, as long as it is apparent by a visual examination of the property. *Thompson*, 28 Wn.2d at 592-93.

The common grantor doctrine is based on this special relationship between the original grantee and the common grantor. Notwithstanding that the Riddells previously owned the land on both sides of the new boundary line, at the time of the quitclaim deed the Riddells and the Fialas were simply adjacent landowners and did not have the sort of special relationship contemplated by the common grantor doctrine.[4] As that relationship did not exist here, application of the common grantor doctrine would be inappropriate in this case. Not only would application of the doctrine under these circumstances be inconsistent with the policy of protecting an innocent original good faith grantee, it would allow a sophisticated original grantee and grantor to take advantage of a subsequent innocent purchaser.

Thus, the trial court did not err in finding that the chain link fence was not sufficient to put Levien on notice that she was receiving less than the 70- by 110-foot lot described in the statutory warranty deed. The missing shallow triangle apparently was not detectable to the untrained eye, and Levien had no other way of knowing of the existence of the quitclaim deed, since it had not been

---

[4]*Piotrowski v. Parks*, 39 Wn. App. 37, 43, 691 P.2d 591 (1984), *review denied*, 103 Wn.2d 1031 (1985), to which the appellants also cite this court, is also inapposite since it involves a parol agreement which can be upheld only when the respective property owners are uncertain as to the true location of the boundary. It thus also involves a boundary doctrine which does not apply to the facts of this case. *See* James R. Ellis, *Boundary Disputes in Washington*, 23 WASH. L. REV. 125 (1948).

recorded and since she was not informed of its existence by the Riddells. The recording statute therefore applies to bar the Fialas' unrecorded claim to the disputed triangular strip.

## II

■ Because we resolve this case on the basis that the recording statute applies to bar the Fialas' claim to the disputed strip, we need not reach the question raised by Levien in her cross-appeal whether the trial court's finding that the chain link fence was installed in May 1985 was supported by substantial evidence. Nor can we reach Levien's challenge to the trial court's dismissal of her damage claims. Levien argues that due to her "miscommunication" with the trial judge, she did not have time to present her damage evidence. If this did occur, it is unfortunate. However, the record provides no basis for us to review why the evidence of damages is insufficient. Absent an adequate record, we cannot evaluate this assignment of error.

Affirmed.

COLEMAN and WEBSTER, JJ., concur.