FILED
COURT OF APPEALS
DIVISION II

2015 JUL -7 AM 8: 46

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LESTER RILEY and SUSAN K. RILEY, husband and wife, | No. 46120-0-II |
| Appellants, | |
| v. | |
| DAVID VALAER and SUSAN E. VALAER, husband and wife, | UNPUBLISHED OPINION |
| Respondents. | |

MELNICK, J. — Lester and Susan Riley (Riley) appeal from the trial court's order granting partial summary judgment to David and Susan Valaer (Valaer) and quieting title to a disputed strip of property. Riley argues that Valaer did not prove the elements of the common grantor doctrine and that the trial court erred when it established the disputed strip of property's boundary. Alternatively, Riley argues that Valaer did not present evidence to establish the applicability of the equitable liability rule. We agree with both of Riley's arguments and reverse.

## FACTS

This case involves a dispute over a strip of property that is approximately nine feet long and lies between two adjacent tax parcels. The east parcel contains a house and the west parcel is vacant. The disputed strip contains a portion of the attached garage of the house, a patio, and a retaining wall. The retaining wall demarcates the approximate west edge of the disputed strip.

In 1951, Fred and Alice Neth (Neth) purchased the east parcel. On it Neth constructed a house, patio, and retaining wall, a portion of which extended several feet over the legally described property line onto the west parcel. The portions extending over the property line are clearly visible.

Later in 1951, Neth purchased the west parcel. In 1971, Neth sold both parcels to Boespflug, who in turn sold both parcels to Holman, subject to easements and restrictions of record.

In 2000, Riley entered into a contract with Holman to purchase both parcels. In 2003, Riley obtained a loan from Argent Mortgage Company (Argent). As security for the loan, Riley executed a deed of trust with power of sale for the east parcel "[together with] all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property." Clerk's Papers (CP) at 413. Riley retained title on the west parcel. In 2010, Riley defaulted on the loan, and Argent commenced a non-judicial foreclosure. On November 29, 2010 Valaer purchased the east parcel at a trustee's sale. Valaer did not inspect the property or review surveys prior to purchasing the east parcel.

PROCEDURAL HISTORY

In 2012, Riley filed a complaint against Valaer to remove all physical encroachments on the west parcel and to reimburse Riley for damages. Valaer moved for partial summary judgment, arguing that the retaining wall established a new boundary line as of the date Neth sold the property to Boespflug and that subsequent purchasers, including Riley, treated the retaining wall as the true boundary between the parcels. Valaer further argued that Riley's damages should be limited to the value of the disputed strip of land under the equitable liability rule.

In support of the motion for partial summary judgment, Valaer presented copies of Riley's 2007 application to the city to subdivide the vacant west parcel, a demolition permit, the deed of trust from Riley to Argent, the deed conveying title to the property to Valaer, and all prior deeds and parcel descriptions dating back to 1951. Riley's application to subdivide the west parcel identified the total size of the parcel as 8,993 square feet and the subdivided lots as totaling 90 feet in width, which accounted for the retaining wall as part of the east parcel. The demolition permit

application identifies the east parcel as 110 feet wide and the west parcel as 90 feet wide, acknowledging the retaining wall as part of the east parcel. Valaer also presented photographs of the house, patio, and retaining wall. The photographs denoted the actual deed line between the two parcels. Valaer declared that if the actual deed line was used, it would significantly cut into the structure of the home. In response, Riley filed a deed history for both parcels.

The trial court orally granted Valaer's motion for partial summary judgment because "the theory of the common grantor does show that there was an [agreed] boundary line established." Report of Proceedings (RP) (Aug. 2, 2013) at 21; CP at 693 (Stipulated order to modify the report of proceedings so that the word "aggrieved" on page 21 is changed to the word "agreed."). The trial court ruled that Neth purchased the vacant parcel "in order to be able to legally establish that the home was not subject to a divided situation" and adopted the common grantor doctrine. RP (Aug. 2, 2013) at 21. The trial court entered a written order granting Valaer's motion for partial summary judgment, but it did not quiet title in Valaer.

Riley moved for reconsideration on the grounds that Valaer did not present evidence to satisfy the common grantor doctrine's requirements.[1] The trial court denied Riley's motion for reconsideration.

Valaer moved the trial court to quiet title and for clarification of the trial court's order granting partial summary judgment. In a hearing on Valaer's motion for clarification, the trial court noted that "it was really an inconsistency to rule in favor of Valaer on the subject of the location by a common grantor but to, at the same time, order the trial as to damages with respect to that theory." RP (Feb. 28, 2014) at 11. The trial court then ruled that because Valaer was

---

[1] Although the trial court only granted summary judgment based on the common grantor doctrine, Riley also moved for reconsideration on the grounds that issues of fact remained as to the applicability of the liability rule.

3

entitled to judgment based on the common grantor doctrine, it would grant the remedy associated with that doctrine and quiet title in Valaer. The trial court additionally stated, "[T]he [c]ourt had also granted summary judgment with respect to the liability rule. And if the decision is not upheld on the common grantor [doctrine] . . . then the issue as to the liability rule has been decided as to the legal right and the case would at that point be remanded to be reheard . . . on the damages issue." RP (Feb. 28, 2014) at 11-12. The trial court entered a final written order consistent with its oral ruling. Riley appeals.

## ANALYSIS

### I.    STANDARD OF REVIEW

We review an order for summary judgment de novo, engaging in the same inquiry as the trial court. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We construe all facts and their reasonable inferences in the light most favorable to the nonmoving party. *Jones*, 146 Wn.2d at 300.

A party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). "A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton*, 115 Wn.2d at 516. If the moving party satisfies its burden, the nonmoving party must present evidence demonstrating that a material

4

fact remains in dispute. *Atherton*, 115 Wn.2d at 516. If the nonmoving party fails to do so, and reasonable persons could reach but one conclusion from all the evidence, then summary judgment is proper. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

II.    COMMON GRANTOR DOCTRINE

The common grantor doctrine is briefly described as follows: "A grantor who owns land on both sides of a line he has established as the common boundary is bound by that line. The line will also be binding on grantees if the land was sold and purchased with reference to the line, and there was a meeting of the minds as to the identical tract of land to be transferred by the sale." *Winans v. Ross*, 35 Wn. App. 238, 240, 666 P.2d 908 (1983) (citations omitted).

The common grantor doctrine is premised on a special relationship between the original grantee and the common grantor, wherein the common grantor had unilateral authority to determine the location of the property boundary. *Levien v. Fiala*, 79 Wn. App. 294, 302, 902 P.2d 170 (1995); *see Strom v. Arcorace*, 27 Wn.2d 478, 481, 178 P.2d 959 (1947); *Thompson v. Bain*, 28 Wn.2d 590, 592-93, 183 P.2d 785 (1947). This special relationship is not found in other boundary adjustment doctrines and justifies the presumption that the grantor's line is the boundary line mentioned in the deed, immediately binding as to the grantee. *See Clausing v. Kassner*, 60 Wn.2d 12, 15, 371 P.2d 633 (1962); *Strom*, 27 Wn.2d at 481; *Levien*, 79 Wn. App. at 302.

Subsequent purchasers are bound to the grantor's line if they purchase the property with actual or inquiry notice that it is the boundary. *Atwell v. Olson*, 30 Wn.2d 179, 183-84, 190 P.2d 783 (1948); *see Strom*, 27 Wn.2d at 481; *Windsor v. Bourcier*, 21 Wn.2d 313, 315-16, 150 P.2d 717 (1944).

"A practical location made by the common grantor of the division line between the tracts granted is binding on the grantees who take with reference to that boundary. The line established in that manner is presumably the line mentioned in the deed, and no lapse of time is necessary to establish such location, which does not rest on acquiescence in an erroneous boundary, but on the fact that the true location was made, and the conveyance in reference to it. However, for a boundary line established by a common grantor to become binding and conclusive on grantees it must plainly appear that the land was sold and purchased with reference to such line, and that there was a meeting of minds as to the identical tract of land to be transferred by the sale."

*Strom*, 27 Wn.2d at 481 (quoting 11 C.J.S. Boundaries § 77, at 651 (1938)).

Washington courts have reduced the common grantor doctrine to two questions: (1) did a common grantor and original grantee establish an agreed boundary, and (2) if so, would a visual inspection of the property indicate to subsequent purchasers that the deed line was no longer functioning as the "true" boundary? *Winans*, 35 Wn. App. at 241; *Fralick v. Clark County*, 22 Wn. App. 156, 160, 589 P.2d 273 (1978). A formal agreement is not required; rather, the parties' manifestations of ownership after the sale may show agreement or meeting of the minds. *Winans*, 35 Wn. App. at 241. The party asserting a boundary by common grantor has the burden of establishing these elements by clear and convincing evidence.[2]

---

[2] No Washington decision has explicitly declared the plaintiff's burden under the common grantor doctrine. However, related doctrines require proof by clear and convincing evidence. *See, e.g.*, *Thomas v. Harlan*, 27 Wn.2d 512, 518, 178 P.2d 965 (1947) ("Title to real property is a most valuable right which will not be disturbed by estoppel unless the evidence is clear and convincing."); *Merriman v. Cokeley*, 168 Wn.2d 627, 630, 230 P.3d 162 (2010) (Acquiescence and mutual recognition must be proved by clear, cogent, and convincing evidence.); *accord Keierleber v. Botting*, 77 Wn.2d 711, 715, 466 P.2d 141 (1970) (Reformation of a deed conveying a property interest for mutual mistake requires proof by clear, cogent, and convincing evidence.). The common grantor doctrine is similar in kind to these doctrines; the rationale that boundary adjustments require this higher quantum of evidence is equally applicable to it.

Riley argues that Valaer did not present evidence to satisfy the requirements of the common grantor doctrine. Br. of Appellant at 7. Specifically, Riley argues that Valaer did not present sufficient evidence of any agreed boundary line between any common grantor and any original grantee. We agree.

A.    Neth as Common Grantor

Riley first argues that the record does not contain evidence to establish an agreement between Neth as a common grantor and Boespflug as an original grantee. We agree.

The undisputed evidence is that Neth purchased the east parcel and then constructed a house, patio, and retaining wall. These structures intruded on the west parcel that Neth purchased in 1951. Neth then sold both parcels to Boespflug in 1971. For approximately sixty years, until 2003 when Riley granted a deed of trust with power of sale on the east parcel to Argent, the two parcels always were conveyed simultaneously to one party. Although Neth could have determined the location of the boundary line between the parcels, a genuine issue of material fact remains as to whether Neth sold the parcels and Boespflug purchased them with reference to an agreed new boundary line. The record contains only the real estate contract between Neth and Boespflug that identifies each parcel with the original boundaries as described in the records of Clark County. Viewed in the light most favorable to Riley, the record contains no evidence that Neth or Boespflug treated the retaining wall as the true boundary between the parcels or that they agreed it was the new boundary.[3] Therefore, because there is a genuine issue of material fact as to this element of the common grantor doctrine, Neth cannot be deemed a common grantor.

---

[3] From a practical standpoint, there was no need to establish a new boundary because, until 2003, the new owners always owned both parcels.

7

B.     Riley as Common Grantor

Riley next argues that the record does not contain evidence to establish an agreement between Riley as a common grantor and Argent as an original grantee. We agree.

Although, the evidence shows that Riley considered the retaining wall to be the boundary line between the east and west parcels,[4] a genuine issue of material fact exists as to whether Riley and Argent established the retaining wall as an agreed boundary when Riley conveyed the east parcel to Argent in 2003. For the first time since 1951, the single party that owned both parcels conveyed an interest in only one of them. The record contains the deed of trust between Riley and Argent, in which Riley gave the east parcel as security for Argent's loan. It included the east parcel "[together with] all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property." CP at 413. The deed of trust identified the east parcel by legal description: "Parcel ID Number 001210230," which currently has the address of 401 West 36th Street, Vancouver, Washington 98660. CP at 413.

Argent accepted the deed of trust, but the record does not contain any evidence that Argent agreed with Riley that the retaining wall constituted the west boundary. It also does not demonstrate that Argent knew of or relied on Riley's attempted short plat, application to subdivide the west parcel submitted to the city, or demolition permit application, in which Riley treated the retaining wall as the boundary of the east parcel. The record also does not contain any evidence that Valaer relied on or knew of Riley's applications to the city at the time Valaer purchased it at foreclosure.

---

[4] In Riley's application to subdivide the west parcel identified the total size of the west parcel and the size of the proposed subdivided lots accounting for the retaining wall as part of the east parcel. Riley further submitted these same dimensions with the demolition permit application, acknowledging that the now disputed strip of land, including the retaining wall, would remain part of the east parcel.

We note that the record does not contain an appraisal of the property Argent took as security in exchange for the loan. Although Riley mentions that "Argent had an appraisal done and obtained title insurance before escrow closed on the refinance," neither the appraisal nor the title insurance are attached as exhibits or are otherwise contained in the record. CP at 320. We further note that the record also does not contain a title report. Although the record contains the first page of a title commitment for Argent's servicing company, it merely refers to the property by its legal description, "Lot 1, Block 3, SUNSET VIEW ADDITION TO THE CITY OF VANCOUVER, according to the plat thereof, recorded in Book 'D' of plats, page 101, records of Clark County, Washington." CP at 361. When viewed in the light most favorable to Riley, genuine issues of material fact exist regarding the information Argent had when it took the east parcel as security for its loan and whether Argent and Riley agreed to the retaining wall as a new boundary. Thus, a genuine issue of material fact exists as to this element of the common grantor doctrine and the trial court erred by granting Valaer summary judgment.

III.   LIABILITY RULE

Riley argues that genuine issues of material fact exist as to the applicability of the liability rule. We agree. Although the trial court's final written order quieted title in Valaer under the common grantor doctrine only, the trial court noted in the reconsideration hearing that it had alternatively granted partial summary judgment to Valaer under the liability rule. Generally, Washington courts will order an encroacher to remove encroaching structures. *Arnold v. Melani*, 75 Wn.2d 143, 152, 437 P.2d 908 (1968). However, where such an order would be oppressive, Washington courts recognize an exception. *Arnold*, 75 Wn.2d at 152. To trigger the exception under the *Arnold* test, the encroacher must prove by clear and convincing evidence that

9

(1) he did not simply take a calculated risk or act in bad faith, or act negligently, willfully, or indifferently in locating the encroaching structure; (2) the damage to the landowner is slight and the benefit of removal equally small; (3) there is ample remaining room for a structure suitable for the area and there is no real limitation on the property's future use; (4) it is impractical to move the encroaching structure as built; and (5) there is an enormous disparity in the resulting hardships.

*Proctor v. Huntington*, 146 Wn. App. 836, 847, 192 P.3d 958 (2008) (citing *Arnold*, 75 Wn.2d at 152), *aff'd*, 169 Wn.2d 491, 238 P.3d 1117 (2010). If all the elements are satisfied, the trial court may adjust the boundary of the disputed property. *Proctor*, 146 Wn. App. at 851.

The first element of the *Arnold* test requires clear and convincing proof that "[t]he encroacher did not simply take a calculated risk, act in bad faith, or negligently, willfully or indifferently locate the encroaching structure." 75 Wn.2d at 152. Viewed in the light most favorable to Riley, genuine issues of material fact exist as to this first element. The record does not demonstrate that Valaer acted with due diligence when purchasing the property. Valaer did not inspect the property or review surveys prior to purchasing the east parcel at the trustee's sale. The record is void of facts to establish that Valaer did not simply take a calculated risk or act negligently in locating the encroaching structure. Thus, the trial court erred by granting Valaer summary judgment.

Because the first element of the *Arnold* test is not satisfied, we do not reach the remaining elements.

We reverse.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, J.

Johanson, C.J.