# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LESLIE M. PENDERGRAST,<br>as an individual, | ) | No. 71726-0-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT MATICHUK and JANE DOE<br>MATICHUK, as individuals and in<br>their marital capacity; BANK OF THE<br>PACIFIC, a Washington State<br>corporation; BLAINE PROPERTIES<br>L.L.C., a Washington State limited<br>liability company; MARK R. and<br>CYNTHIA A. SANFORD, as<br>individuals and in their marital<br>capacity; and GINA M.<br>LINGENFELTER and JOHN DOE<br>LINGENFELTER, as individuals and<br>in their marital capacity, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | PUBLISHED OPINION<br><br><br><br><br>FILED: August 31, 2015 |
| Respondents. | ) | |

LEACH, J. — In his poem "Mending Wall," Robert Frost observed, "Before I built a wall I'd ask to know / What I was walling in or walling out, / And to whom I was like to give offense."[1] This case illustrates the wisdom of Frost's observation in the context of an existing fence. Robert Matichuk moved a fence and cut down a tree over the objection of adjacent property owner, Leslie Pendergrast.

---

[1] THE POETRY OF ROBERT FROST: THE COLLECTED POEMS, COMPLETE AND UNABRIDGED, 33 (Edward Connery Lathem ed., Henry Holt & Co. 1969).

The trial court ruled on summary judgment that Pendergrast established ownership of the disputed land through boundary by common grantor, and a jury later awarded her damages for trespass and timber trespass.

Pendergrast appeals the trial court's refusal to treble the noneconomic damages portion of the jury's timber trespass award. Matichuk cross appeals. First, he challenges the summary judgment order, claiming that he and the common grantor had no agreement that a fence and not the deed description defined the common boundary. He also requests attorney fees and costs for defending against the lis pendens Pendergrast filed. And he argues that the trial court erred by denying his motion for a new trial or reduction of noneconomic damages.

Because both Matichuk's and Pendergrast's "manifestations of ownership" showed they recognized the fence as the true boundary, we hold that no genuine issue of material fact prevented the trial court from ruling as a matter of law that Pendergrast established boundary by common grantor. We deny Matichuk's request for attorney fees and costs under the lis pendens statute. We also conclude that the trial court did not abuse its discretion by denying Matichuk's motion for a new trial or reduction of noneconomic damages. Finally, the plain language of former RCW 64.12.030 (1881) entitles Pendergrast to treble the

amount of both the economic and noneconomic damages awarded for timber trespass. We remand for further proceedings consistent with this opinion.

FACTS

Tali and Cyrus Conine (collectively Conine) owned property in Blaine, Washington, which they divided into separate parcels. In April 2006, Conine sold Robert Matichuk and his wife the vacant western parcel, described in the deed as "the south 75 feet of Lot 30, Block 5, Perley's Replat." Matichuk planned to develop condominiums on the property. A six-foot wooden board fence ran along a portion of the east boundary, separating Matichuk's parcel from property Conine retained. Before purchase, Matichuk paced the dimensions of the property. He concluded from his site visit that he "didn't know where the fence was in relation to the property line" but did nothing further to investigate the parcel's boundaries.

In September 2006, Conine sold Leslie Pendergrast the eastern parcel, which the fence separated from the Matichuk property. The deed described the parcel as "LOT 5 & 6, BLOCK 5 PLAT OF PERLEY'S SUBDIV." The fence ran the length of the western boundary of Pendergrast's property, which had a house on it. A large tree with a tree house stood near the fence, on Pendergrast's side. Pendergrast maintained and used the entire fenced area as her backyard from

2006 until 2009. She had plans to renovate the property to create a unique maritime-themed bed-and-breakfast.

Neither Matichuk's nor Pendergrast's deed mentions the fence. The real estate listing Pendergrast reviewed before purchasing her property described the parcel as "fenced-partially." On the seller disclosure statement, Conine answered "No" to the question of whether any encroachments or boundary disputes existed related to the property.

In June 2008, Matichuk commissioned a survey of his property for his building permit application. The survey, which used the deed description, showed the fence and tree located entirely on Matichuk's property.[2] On September 11, 2008, the city of Blaine conditionally approved Matichuk's plans for a fourplex on the property.[3]

In January 2009, Matichuk told Pendergrast in a letter that the fence was "6-8 feet" onto his property and that he intended to move it "in the near future" to the "common property line." On April 21, 2009, Pendergrast responded through counsel, demanding that Matichuk not move the fence and claiming ownership of the property "encompassed by the fence." Pendergrast contended that "this fence was located in its existing location by the common owner of your

---

[2] Pendergrast's own survey later confirmed Matichuk's findings.
[3] The Matichuks later submitted a revised site plan to develop two duplex buildings, which the city approved in November 2009.

respective properties and effectively becomes the agreed boundary, taking precedence over any boundary that may have been located by a surveyor." In an April 24, 2009, letter, Pendergrast's counsel warned Conine that Conine was "liable for damages for misrepresenting the condition of the property" as subject to no encroachments or boundary disputes.

Despite Pendergrast's demand, Matichuk moved the fence to the deed line. Matichuk also cut down and removed the tree and tree house.

On February 26, 2010, Pendergrast filed suit to quiet title and for ejectment, trespass, and unlawful detainer. Pendergrast also recorded a lis pendens against Matichuk's property.

On October 31, 2012, Matichuk filed a motion for summary judgment, seeking to dismiss Pendergrast's quiet title claim because Pendergrast could not establish any right to the disputed property, either by boundary by agreement or boundary by common grantor. On November 21, 2012, Pendergrast filed a response and cross motion for summary judgment.

On January 4, 2013, the trial court granted Matichuk's motion to dismiss Pendergrast's boundary by agreement claim but denied Matichuk's motion to dismiss Pendergrast's common grantor claim. The court granted Pendergrast's cross motion to quiet title based on boundary by common grantor. The court denied Matichuk's motion for reconsideration.

On July 5, 2013, Pendergrast amended her complaint to add claims for abatement. She also added as a party Blaine Properties LLC, the entity to which Matichuk had transferred the property.

At trial, the jury considered Pendergrast's claims for trespass, timber trespass, unlawful detainer, ejectment, and abatement in light of the trial court's earlier summary judgment ruling that the disputed property belonged to Pendergrast. The jury found Matichuk and Blaine Properties LLC liable for trespass, awarding economic damages of $5,200 and noneconomic damages of $75,000. The jury also found Matichuk liable for timber trespass and awarded Pendergrast $3,310 in economic damages and $40,000 in noneconomic damages. The trial court trebled the economic damages for timber trespass under former RCW 64.12.030. However, the court denied Pendergrast's request to treble the noneconomic damages under the timber trespass statute "because such a trebling is not specifically provided in [former] RCW 64.12.030, which, as a penal or punitive statute, should be interpreted and applied literally and narrowly." The court denied Matichuk's motion for a new trial or reduction of noneconomic damages.

Pendergrast appeals the trial court's refusal to treble her noneconomic timber trespass damages. Matichuk cross appeals the trial court's order granting Pendergrast's cross motion for summary judgment. Matichuk also cross appeals

the court's findings of fact and conclusions of law and order denying Matichuk's motion for a new trial or reduction of noneconomic damages. Matichuk requests attorney fees and costs on remand under RCW 4.28.328(3) for defending against the lis pendens.

ANALYSIS

Matichuk's Cross Appeal

As a threshold matter, we address Matichuk's claim that the trial court erred by granting Pendergrast's cross motion for summary judgment based on the common grantor doctrine. We review a trial court order granting summary judgment de novo, engaging in the same inquiry as the trial court.[4] Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5] We view the facts and any reasonable inferences from those facts in the light most favorable to the nonmoving party.[6]

---

[4] Weden v. San Juan County, 135 Wn.2d 678, 689, 958 P.2d 273 (1998).
[5] CR 56(c).
[6] Fed. Way Sch. Dist. No. 210 v. State, 167 Wn.2d 514, 523, 219 P.3d 941 (2009).

Common Grantor Doctrine

An action to quiet title is an equitable proceeding "'designed to resolve competing claims of ownership.'"[7] Generally, a bona fide purchaser of an interest in real property is entitled to rely on record title.[8] The common grantor doctrine protects an original grantee acquiring property in "good faith reliance on the boundary description provided by the common grantor who originally owned both lots in their entirety" and thus had power to determine the location of the boundary.[9]

A common boundary established by a grantor who owns land on both sides of the line binds that grantor.[10] Even absent formal agreement, this boundary binds grantees if the land was sold and purchased with reference to the line and the parties agreed about the identical tract of land transferred by the sale.[11]

Application of the common grantor doctrine presents two questions: (1) was there an agreed boundary established between the common grantor and

---

[7] Walker v. Quality Loan Serv. Corp., 176 Wn. App. 294, 322, 308 P.3d 716 (2013) (quoting Kobza v. Tripp, 105 Wn. App. 90, 95, 18 P.3d 621 (2001)).

[8] Levien v. Fiala, 79 Wn. App. 294, 299, 902 P.2d 170 (1995).

[9] Levien, 79 Wn. App. at 302; Thompson v. Bain, 28 Wn.2d 590, 592-93, 183 P.2d 785 (1947).

[10] Winans v. Ross, 35 Wn. App. 238, 240, 666 P.2d 908 (1983) (citing Fralick v. Clark County, 22 Wn. App. 156, 159, 589 P.2d 273 (1978)).

[11] Winans, 35 Wn. App. at 240; Kronawetter v. Tamoshan, Inc., 14 Wn. App. 820, 826, 545 P.2d 1230 (1976); Thompson, 28 Wn.2d at 592.

original grantee, and (2) if so, would a visual examination of the property show subsequent purchasers that the deed line no longer functioned as the true boundary?[12] The parties' manifestations of ownership after the sale can establish an agreement.[13] The party asserting boundary by common grantor has the burden of proof.[14]

Here, both Matichuk and Pendergrast are grantees of Conine, the original grantor. Pendergrast, who acquired her property after Matichuk, maintains that she and Conine had the necessary meeting of the minds that Pendergrast's parcel extended to the fence. To support this, she points to the listing agreement and seller disclosure form she relied on, as well as her three years of use of the property up to and including the fence. Matichuk asserts that he had no such agreement with Conine—that he purchased based solely on the legal description.

The parties do not dispute that Conine, as their common grantor, conveyed their respective parcels as separate properties divided by a six-foot fence. They also do not dispute that the real estate listing Pendergrast received before purchasing her parcel described it as "fenced-partially" and that on the seller disclosure form Conine answered "No" to the question of whether any encroachments or boundary disputes existed related to the property.

---

[12] Fralick, 22 Wn. App. at 160.
[13] Winans, 35 Wn. App. at 241.
[14] See Martin v. Hobbs, 44 Wn.2d 787, 791, 270 P.2d 1067 (1954).

Pendergrast testified, and Matichuk does not dispute, that Pendergrast occupied and cared for the property up to the fence line from 2006 to 2009. Pendergrast also testified that she observed Matichuk walking and working on his property. Matichuk disputes he was "using" his vacant property, claiming that he was working on building permits based on the legal description in the deed. But when deposed, he conceded that when he paced off the property's dimensions before his purchase, he "came to the conclusion the fence was not on the property line. Actually, let me rephrase that, I came to the conclusion I didn't know where the fence was in relation to the property line." He also acknowledged that the fence "appeared to relate to" the adjacent property, but he did not inquire further about the true boundary. And he conceded that when he moved the fence and cut the tree, he knew that Pendergrast was asserting ownership of the disputed property.

Matichuk does not dispute that he made no attempt to use any of the property on Pendergrast's side of the fence before moving it in 2009, roughly a year after commissioning his survey and three years after purchasing the lot. But he argues that at best, his failure to assert ownership immediately and remove the fence at the time of purchase, "with nothing more, creates only an *inference* of an agreement between Matichuk and Conine, and is not actual proof of one."

We disagree. Both parties' conduct, from before they purchased until Matichuk announced he intended to move the fence, showed an understanding

that they owned adjacent parcels separated by the fence. And a visual examination of the property gave notice that the fence functioned as the true boundary. The realty listing agreement and seller disclosure form further support the conclusion that Conine intended to sell the parcels in relation to the fence.

Matichuk emphasizes that he testified that "the purchase was made based on the property dimensions described in the deed" and that he never discussed the purchase with Conine. "There is nothing in the record to suggest that the Matichuks were informed that there was an agreement establishing a boundary at the fence line." But in Winans v. Ross,[15] Division Two of this court rejected this argument: "A formal, or specific, or separate contract as to the boundary line between the parties is not necessary." The court also rejected the argument that because the parties purchased their lots by legal description only, there was no agreement between them as grantees that the fence was the boundary.[16] The court held that as long as "substantial evidence supports the conclusion that the fence provided notice to subsequent purchasers that it was the boundary," this boundary would bind those purchasers.[17]

Here, Matichuk's deposition testimony shows that before he purchased his property, he had notice of a discrepancy between the deed description and the

---

[15] 35 Wn. App. 238, 241, 666 P.2d 908 (1983) (citing Thompson, 28 Wn.2d at 592).
[16] Winans, 35 Wn. App. at 241-42.
[17] Winans, 35 Wn. App. at 242.

property he measured by pacing to the fence and that the fence "appeared to relate to" the adjoining property, which Conine retained for five months before selling it to Pendergrast. Presumably Conine did not intend to sell the disputed property to both Matichuk and Pendergrast, as would have occurred if Conine had sold Matichuk the property described in the deed and then, five month later, sold Pendergrast an adjacent lot described as "fenced-partially." Conine sold two adjacent properties separated by an unambiguous visual boundary, the six-foot board fence.

Unlike some cases where a court has not found a well-defined boundary line for purposes of boundary by common grantor or other doctrines, such as mutual recognition and acquiescence,[18] here the record discloses no reason for the existence of the fence other than to function as a boundary between the properties. Matichuk and Pendergrast manifested ownership of their separate

---

[18] See, e.g., Merriman v. Cokeley, 168 Wn.2d 627, 631-32, 230 P.3d 162 (2010) (three survey markers overgrown with blackberry bushes and weeds not a clear and well-defined line); Waldorf v. Cole, 61 Wn.2d 251, 255, 377 P.2d 862 (1963) (rockery against a dirt bank was an insufficient boundary marker); Scott v. Slater, 42 Wn.2d 366, 368-69, 255 P.2d 377 (1953) (row of pear trees of varying shapes and sizes, which did not terminate at a well-defined point, not a clear and well-defined line), overruled on other grounds by Chaplin v. Sanders, 100 Wn.2d 853, 861 n.2, 676 P.2d 431 (1984); Skov v. MacKenzie-Richardson, Inc., 48 Wn.2d 710, 716, 296 P.2d 521 (1956) ("occasional grazing" insufficient to establish boundary line); Green v. Hooper, 149 Wn. App. 627, 642, 205 P.3d 134 (2009) (short retaining wall extending only partially into beach area, with no other physical designations, insufficient to establish boundary line); Fralick, 22 Wn. App. at 160 ("lower falls" designation, without fence or other marking, insufficient to give visual notice of boundary).

properties in relation to the fence. Matichuk does not show any genuine issue of material fact that would preclude summary judgment. The trial court did not err in granting Pendergrast's cross motion and quieting title in her based on boundary by common grantor.

### Attorney Fees under RCW 4.28.328(3)

In his cross appeal, Matichuk also argues that the lis pendens statute entitles him to an award of attorney fees and costs. RCW 4.28.320 allows a party to an action affecting title to real property to file with the county auditor a notice of the pendency of the action, or lis pendens. A lis pendens clouds title to the property. RCW 4.28.328(3) imposes liability for actual damages upon a claimant who files one without "substantial justification" and, in the court's discretion, for reasonable attorney fees and costs incurred in defending the action. Here, Pendergrast had substantial justification for filing the lis pendens. We deny Matichuk's request.

### Noneconomic Damages

Next, Matichuk contends that even if this court affirms the trial court's summary judgment order, it should still reverse the trial court's denial of Matichuk's motion for a new trial or reduction of noneconomic damages. CR 59 authorizes the trial court to vacate a verdict and order a new trial when, among other circumstances, an award of damages was "so excessive or inadequate as

-13-

unmistakably to indicate that the verdict must have been the result of passion or prejudice" or where "substantial justice has not been done."[19] Alternatively, the trial court may increase or reduce a damages award.[20]

The amount of damages presents a question of fact.[21] "'An appellate court will not disturb an award of damages made by a jury unless it is outside the range of substantial evidence in the record, or shocks the conscience of the court, or appears to have been arrived at as the result of passion or prejudice.'"[22] A damages award "'shocks the conscience'" if it is "'flagrantly outrageous and extravagant.'"[23] And passion and prejudice must be "'unmistakable'" for the reviewing court to disturb the jury's award.[24]

Substantial evidence exists if it is "'sufficient to persuade a fair-minded, rational person of the truth of the finding.'"[25] A plaintiff is not required to prove that his or her distress was severe, but an award must be in proportion to the

---

[19] CR 59(a)(5), (9).

[20] RCW 4.76.030.

[21] Bunch v. King County Dep't of Youth Servs., 155 Wn.2d 165, 179, 116 P.3d 381 (2005).

[22] Bunch, 155 Wn.2d at 179 (quoting Bingaman v. Grays Harbor Cmty. Hosp., 103 Wn.2d 831, 835, 699 P.2d 1230 (1985)).

[23] Bunch, 155 Wn.2d at 179 (quoting Bingaman, 103 Wn.2d at 836-37).

[24] Bunch, 155 Wn.2d at 179 (quoting Bingaman, 103 Wn.2d at 836); RCW 4.76.030.

[25] State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006) (quoting State v. Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999)).

injury suffered.[26] And while damages "need not be proved with mathematical certainty," they "must be supported by competent evidence."[27]

We review a trial court's denial of a motion for a new trial or for reduction of damages for abuse of discretion.[28] A court abuses its discretion when it makes a "'manifestly unreasonable'" decision, rests the decision on facts unsupported by the record, or applies an incorrect legal standard.[29] The reviewing court strongly presumes the jury's verdict is correct, and a trial court's denial of a reduction of damages strengthens the verdict.[30]

Matichuk argues that Pendergrast's proof of noneconomic damages, which the court's instructions defined as "[m]ental anguish, emotional distress, and inconvenience experienced by the Plaintiff as a result of the trespass or timber trespass," was "limited." He emphasizes that there was no evidence that she consulted a health care professional and that no one testified on her behalf

---

[26] Nord v. Shoreline Sav. Ass'n, 116 Wn.2d 477, 483-85, 805 P.2d 800 (1991); Hill v. GTE Directories Sales Corp., 71 Wn. App. 132, 139-40, 856 P.2d 746 (1993).

[27] Hill, 71 Wn. App. at 140 (citing Rasor v. Retail Credit Co., 87 Wn.2d 516, 530-31, 554 P.2d 1041 (1976)).

[28] Bunch, 155 Wn.2d at 180; Cox v. Gen. Motors Corp., 64 Wn. App. 823, 826, 827 P.2d 1052 (1992).

[29] State v. Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012) (internal quotation marks omitted) (quoting State v. Rohrich, 175 Wn.2d 647, 654, 71 P.3d 638 (2003)).

[30] Bunch, 155 Wn.2d at 179-80 (citing Sofie v. Fibreboard Corp., 112 Wn.2d 636, 654, 771 P.2d 711, 780 P.2d 260 (1989); Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 330, 858 P.2d 1054 (1993)).

about her anxiety and distress. Our Supreme Court has held, however, that "such evidence is not strictly required; our cases require evidence of anguish and distress, and this can be provided by the plaintiff's own testimony."[31]

Matichuk cites Hill v. GTE Directories Sales Corp.[32] to support his argument that "insufficient credible evidence" supported the jury's verdict of a total of $115,000 in noneconomic damages. But we distinguish Hill. In that case, Division Three of this court affirmed a trial court's order reducing a damages award after finding that the jury erred by awarding economic damages "clearly outside the range of the evidence" and basing a large noneconomic damages award on only "meager" evidence.[33] Here, the trial court denied Matichuk's motion for reduction of damages, which strengthens the jury's verdict. As in Hill, here "[t]he trial court was in the better position to make that determination and is to be accorded room for the exercise of its sound discretion."[34]

Matichuk also attributes Pendergrast's stress to several other factors besides the boundary dispute: insurance issues arising from a plumbing emergency in the house, other properties in foreclosure, and the pressures of providing for her adult children. He points out that although Pendergrast blamed

---

[31] Bunch, 155 Wn.2d at 181 (citing Nord, 116 Wn.2d at 487).
[32] 71 Wn. App. 132, 856 P.2d 746 (1993).
[33] Hill, 71 Wn. App. at 139-40.
[34] Hill, 71 Wn. App. at 140 (citing Washburn v. Beatt Equip. Co., 120 Wn.2d 246, 279, 840 P.2d 860 (1992); Bingaman, 103 Wn.2d at 835).

the loss of her dream of a bed-and-breakfast on Matichuk, she did not file a building permit for a planned swimming pool or garage renovation. And he questions whether the health problems she testified about would even allow her to operate such a business.

Contrary to Matichuk's contentions, Pendergrast presented evidence sufficient to support the award of noneconomic damages. Pendergrast testified that she planned to build a swimming pool in the backyard and construct a unique deck in the tree as a vista point for Drayton Harbor and White Rock, Canada. She believed that these features, together with renovations to convert the detached garage into a honeymoon cottage, would make her bed-and-breakfast unique among local establishments. She testified that by January 2009, she had finished remodeling the interior of the house and was preparing to begin work on the backyard. She said that when she received Matichuk's letter, she "felt like somebody had slugged [her] in the stomach" and was "in tears." She testified further that she felt "violated, trespassed upon. . . . I was devastated. . . . [P]utting that fence into this new location stopped everything because now I didn't have the proper setback that I needed to continue with the uniqueness of the bed and breakfast." She testified that the stress made her feel "almost catatonic" and that when Matichuk cut down the tree, she had "an overwhelming feeling of a point of no return." She stated that the conflict had

affected her health "[v]ery negatively" and that after the project stalled, "I was sick, I was sick over it. And I still am because it's five years down the road." Pendergrast presented sufficient evidence to convince a fair-minded, rational person that she suffered "mental anguish, emotional distress, or inconvenience," which sufficiently supports an award for damages.[35]

Matichuk also emphasizes that the jury's awards of noneconomic damages for trespass and timber trespass were "more than fourteen times the economic verdict" and "more than twelve times the economic verdict," respectively. But the jury uses the evidence presented for an award of noneconomic damages, not the economic damages award. And a court may not overturn a jury verdict merely because of its size.[36] Matichuk fails to show that the jury's award of noneconomic damages here falls outside the range of evidence or is so excessive as to be "'flagrantly outrageous and extravagant,'" particularly in light of the trial court's denial of a reduction and this court's presumption that a jury verdict is correct.[37]

Matichuk also contends that "the jury wanted to go further than it was instructed it could do" and demonstrated "its passion to punish the defendants" when it asked the court if it should award attorney fees. But this question from

---

[35] Bunch, 155 Wn.2d at 181.

[36] Thompson v. Berta Enter., Inc., 72 Wn. App. 531, 543, 864 P.2d 983 (1994).

[37] See Bunch, 155 Wn.2d at 182.

the jury, without more, does not demonstrate passion and prejudice, which must be "of such manifest clarity as to make it unmistakable" before it will justify reduction of a jury verdict.[38] Nor does the fact that the jury found Matichuk and Matichuk's corporate entity, but not the three other defendants, liable for trespass prove passion and prejudice. Matichuk's contentions do not establish "anything untoward in the proceedings that justifies setting the verdict aside based on passion and prejudice."[39] The trial court did not abuse its discretion by denying Matichuk's motion for a new trial or reduction of noneconomic damages.

<u>Treble Damages</u>

Pendergrast raises one issue on appeal, contending that the trial court erred when it refused to treble the jury's award of noneconomic damages. We hold that the unambiguous language of former RCW 64.12.030 required the trial court treble the jury's noneconomic damages award.

The meaning of a statute presents a question of law we review de novo.[40] When construing a statute, our primary objective is to ascertain and carry out the legislature's intent.[41] Statutory interpretation begins with the statute's plain meaning, which we discern from the ordinary meaning of its language in the

---

[38] <u>Bingaman</u>, 103 Wn.2d at 836 (citing <u>James v. Robeck</u>, 79 Wn.2d 864, 870, 490 P.2d 878 (1971)).

[39] <u>Bunch</u>, 155 Wn.2d at 183.

[40] <u>Broughton Lumber Co. v. BNSF Ry.</u>, 174 Wn.2d 619, 624, 278 P.3d 173 (2012).

[41] <u>State v. Gray</u>, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012).

-19-

context of the statute, related statutory provisions, and the statutory scheme as a whole.[42] If the statute's meaning is unambiguous, the inquiry ends.[43] Our system of government does not allocate to the judicial branch the function of improving or changing the law by inserting an exception into a statute's text that the legislature did not provide.

"Washington, unlike other states, employs a very restrictive approach to punitive damages [and] prohibits the recovery of punitive damages as a violation of public policy unless expressly authorized by statute."[44] Former RCW 64.12.030 provides a specific punitive remedy for an intentional timber trespass:

> Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, . . . if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be.

The timber trespass statute has three purposes: (1) to punish a voluntary offender, (2) "to provide, by trebling the actual present damages, a rough measure for future damages," and (3) "[t]o discourage persons from carelessly or intentionally removing another's merchantable shrubs or trees on the gamble that the enterprise will be profitable if actual damages only are incurred."[45] Timber

---

[42] Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).
[43] Lake, 169 Wn.2d at 526.
[44] Broughton Lumber, 174 Wn.2d at 638 n.14 (citing Barr v. Interbay Citizens Bank, 96 Wn.2d 692, 697, 635 P.2d 441, 649 P.2d 827 (1982)).
[45] Guay v. Wash. Nat. Gas Co., 62 Wn.2d 473, 476, 383 P.2d 296 (1963).

trespass damages must be reasonable in relation to the value of the property.[46] The legislature mandated the punitive aspect of the trebling provision and did not leave it to the discretion of the courts.[47] Because the timber trespass statute is penal and not merely remedial, courts strictly construe it.[48] The statute makes the remedy available in the case of a "willful" trespass only; the court cannot impose treble damages for a "casual or involuntary" trespass or one based on a mistaken belief of ownership of the land.[49]

Former RCW 64.12.030 contains no limitation on the type of damages subject to trebling. Pendergrast argues, "The legislative mandate could not be clearer and that is to simply treble any damages assessed for a timber trespass." She cites Birchler v. Castello Land Co.,[50] in which our Supreme Court held that a prevailing plaintiff may recover noneconomic damages in a timber trespass action. Matichuk counters that "historically cases have confined treble damages to the injury to the vegetation itself." He argues that even after Birchler, "[t]he addition of emotional distress damages to the remedies available does not, in

---

[46] Allyn v. Boe, 87 Wn. App. 722, 734-35, 943 P.2d 364 (1997).

[47] Happy Bunch, LLC v. Grandview N., LLC, 142 Wn. App. 81, 96, 173 P.3d 959 (2007) (citing Pearce v. G.R. Kirk Co., 92 Wn.2d 869, 875, 602 P.2d 357 (1979)).

[48] Broughton Lumber, 174 Wn.2d at 633 (quoting Bailey v. Hayden, 65 Wash. 57, 61, 117 P. 720 (1911)); Birchler v. Castello Land Co., 133 Wn.2d 106, 110, 942 P.2d 968 (1997).

[49] Former RCW 64.12.040 (1881); Birchler, 133 Wn.2d at 109-10.

[50] 133 Wn.2d 106, 116, 942 P.2d 968 (1997).

and of itself, require that those additional damages be trebled," noting that the Birchler court expressly declined to address this question.[51] But Matichuk cites no authority approving a court's limitation or contraction of a statute's plain language.

Certain other Washington statutes with similar provisions explicitly limit treble damages to actual, economic damages. The Insurance Fair Conduct Act, chapter 48.30 RCW, provides that the superior court may increase an award to "an amount not to exceed three times the actual damages."[52] The Consumer Protection Act, chapter 19.86 RCW, allows the court to increase an award "to an amount not to exceed three times the actual damages sustained," but not to exceed $25,000.[53]

By contrast, in the 18 years since our Supreme Court decided Birchler, the legislature has not amended the timber trespass statute to limit the types of damages subject to trebling. If the legislature meant only "actual damages" or "economic damages only" by its use of the word "damages" in former RCW 64.12.030, then the legislature's use of the word "actual" and "economic" in the statutes described above is superfluous. Wherever possible, courts construe

---

[51] The court's stated reason was the plaintiff's failure to raise the issue at any time before oral argument. Birchler, 133 Wn.2d at 110 n.3.

[52] RCW 48.30.015(2).

[53] RCW 19.86.090.

statutes so that no portion is superfluous, and "[s]tatutes should be interpreted so as to not leave one statute mere surplusage."[54]

Moreover, RCW 4.24.630, a separate statute that applies to liability for damage to land and property in situations not covered by former RCW 64.12.030, does not expressly exclude noneconomic damages from those subject to trebling under the statute. It provides that one who "wrongfully causes waste or injury to the land . . . is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury."[55] Recoverable damages "include, but are not limited to, damages for the market value of the property removed or injured, and for injury to the land, including the costs of restoration," as well as reimbursement of reasonable costs, "including but not limited to" reasonable attorney fees and costs related to investigation and litigation.[56]

"It is clear that treble damages will be imposed upon trespassers cutting timber under [former] RCW 64.12.030, unless those trespassing exculpate themselves under the provisions of [former] RCW 64.12.040."[57] The jury found that the mitigating circumstances of former RCW 64.12.040 did not apply to Matichuk's cutting of the tree. Former RCW 64.12.030 unambiguously requires

---

[54] Sim v. Wash. State Parks & Recreation Comm'n, 90 Wn.2d 378, 383, 583 P.2d 1193 (1978); Schrempp v. Munro, 116 Wn.2d 929, 934, 809 P.2d 1381 (1991).

[55] RCW 4.24.630(1).

[56] RCW 4.24.630(1) (emphasis added).

[57] Smith v. Shiflett, 66 Wn.2d 462, 464-65, 403 P.2d 364 (1965).

that the court award "treble the amount of damages claimed or assessed" for a timber trespass. Under Birchler, "damages claimed or assessed" may include noneconomic damages. And in the years since our Supreme Court decided Birchler, the legislature has not limited the types of damages subject to trebling. We hold that Pendergrast is entitled to treble the amount of all timber trespass damages.

## CONCLUSION

We affirm the trial court's order on summary judgment quieting title to the disputed property in Pendergrast based on boundary by common grantor. We deny Matichuk's request for attorney fees under the lis pendens statute and affirm the trial court's denial of Matichuk's motion for a new trial or reduction of noneconomic damages. We hold that the plain language of former RCW 64.12.030 entitles Pendergrast to treble the amount of all damages awarded for timber trespass. We remand for further proceedings consistent with this opinion.

_Leach, J._

WE CONCUR:

_Trickey, J_

_Dwyer, J_

-24-