# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| 134th STREET LOFTS, LLC, | No. 52896-7-II |
| Appellant, | |
| v. | |
| iCAP NORTHWEST OPPORTUNITY FUND, LLC, and iCAP PACIFIC NW MANAGEMENT, LLC, | UNPUBLISHED OPINION |
| Respondents, | |
| and | |
| 134th STREET LOFTS II, LLC, | |
| Nominal Third-Party Respondent. | |

CRUSER, J. — 134th Street Lofts, LLC (134th Street Lofts) appeals from various orders on partial summary judgment and summary judgment in favor of iCap Northwest Opportunity Fund (iCap). 134th Street Lofts argues that the trial court erred in awarding attorney fees incurred by iCap in canceling the lis pendens because the lis pendens was properly filed in an action affecting title to real property. 134th Street Lofts also argues that the trial court improperly granted summary judgment because iCap breached its duty of good faith and fair dealing when it failed to remove a deed of trust on a property owned by the parties through their proxy entity.

1

We hold that the trial court did not err in awarding attorney fees iCap incurred in canceling the lis pendens because the dispute did not involve title to real property. We further hold that the trial court properly granted summary judgment in favor of iCap because there is no genuine dispute of material fact that iCap did not breach the duty of good faith and fair dealing,

Accordingly, we affirm.

FACTS

I. ENTITY FORMATION

On November 3, 2015, 134th Street Lofts and iCap formed an entity called "134th Street Lofts II, LLC" (Project Entity). Clerk's Papers (CP) at 73. The entity was created to "own, hold, develop, and construct improvements on, sell or refinance, and otherwise deal with" real property located in Clark County, Washington. *Id.* at 120. The Project Entity's goal was to develop the property into an apartment building. As designated by the Project Entity's formation agreement (LLC Agreement), 134th Street Lofts and iCap are the only managers and members of the Project Entity.

Pursuant to the Management Services Agreement (MSA) between the Project Entity and 134th Street Lofts, 134th Street Lofts was to serve as the developer of the property. Among its responsibilities as developer, 134th Street Lofts was required to obtain a loan on behalf of the Project Entity, approved by the managers and members, to finance the project. Parkview Financial Fund 2015, LP, (Parkview Financial) provided the first position construction loan to the Project Entity, secured by the property. Under the express terms of the construction loan between the Project Entity and Parkview Financial, no other liens or encumbrances on the property were permitted.

2

## II. INITIAL DISPUTE AND JANUARY SETTLEMENT AGREEMENT

After the project was underway, a dispute arose wherein iCap alleged that 134th Street Lofts did not complete some of its contractual obligations as a manager under the LLC Agreement and as a developer under the MSA. On June 27, 2017, iCap filed a complaint against 134th Street Lofts. In addition to allegations of breach of contract and tortious interference with a business expectancy, iCap sought an injunction that would require 134th Street Lofts to cooperate in transitioning management of the Project Entity to iCap.

Under the LLC Agreement, iCap was entitled to remove 134th Street Lofts from its position as manager on the occurrence of a "Termination Event," such as 134th Street Lofts' breach of contract. *Id.* at 106. The MSA also provided that following a "Termination Event," 134th Street Lofts would relinquish any authority to act as developer on behalf of the Project Entity. *Id.* at 139. 134th Street Lofts denied iCap's allegations and raised several counterclaims, including breach of the duty of good faith and fair dealing.

Following months of negotiations, on January 16, 2018, 134th Street Lofts and iCap entered into a Settlement Agreement that amended both the LLC Agreement and the MSA. This Settlement Agreement established 134th Street Lofts as the sole operating manager of the Project Entity and developer of the property. Aside from several modifications in the Settlement Agreement, the LLC Agreement and the MSA remained in full force and effect. 134th Street Lofts agreed that the Project Entity would pay iCap $6,170,506.32 by June 1, 2018. The anticipated completion date for the project was in June of 2018, and thus the property development would either be marketable or eligible for permanent "take-out" financing at that time, enabling 134th Street Lofts to cause the Project Entity to make this payment. *Id.* at 66. The Settlement Agreement

also contained an attorney fee provision, which provided that where a party to the agreement initiates a lawsuit to enforce its terms, the prevailing party is entitled to reasonable attorney fees and costs.

134th Street Lofts also agreed that the Project Entity would execute a promissory note in favor of iCap for $1,850,000, secured by a deed of trust against the property and payable to iCap by October 1, 2018. iCap agreed that the deed of trust was subordinate to the senior Parkview Financial loan that had previously been secured against the property. iCap recorded the deed of trust with the Clark County Auditor.

In entering the Settlement Agreement, neither party anticipated that Parkview Financial would object to iCap's subordinate and subsequent lien on the property. But when Parkview Financial learned that iCap had a second lien secured against the property, it refused to release further funds for construction of the project unless iCap removed its deed of trust. 134th Street Lofts immediately asked that iCap remove its deed of trust, but iCap did not do so until approximately three weeks after 134th Street Lofts' request.

In the several weeks that elapsed before iCap removed its deed of trust and Parkview Financial disbursed funds, contractors were not paid for their work and left the job site. By the time the funds were made available, the cost of restarting work and completing the job had substantially increased. As a result, the project was further delayed, and the delay prevented 134th Street Lofts from adhering to contractual budget and schedule requirements and from timely making the $6.1 million payment to iCap required under the Settlement Agreement.

### III. CURRENT LAWSUIT AND LIS PENDENS ACTION

After an unsuccessful attempt at negotiating an amendment to the prior Settlement Agreement, iCap sent 134th Street Lofts a notice of default and termination. iCap also asserted its right under the Settlement Agreement to assume management of the Project Entity and to terminate 134th Street Lofts as developer due to the occurrence of a Termination Event.

134th Street Lofts filed a lawsuit against iCap, alleging that iCap breached its contract by violating its duty of good faith and fair dealing and by failing to remove the deed of trust on the property for several weeks after Parkview Financial notified the Project Entity that it would withhold further disbursement of construction loan funds. In addition, 134th Street Lofts sought declaratory relief asking that the trial court order iCap to grant 134th Street Lofts an eight-month extension on its project completion and payment deadlines. 134th Street Lofts also sought injunctive relief, asking that the trial court restrain iCap from assuming control over the Project Entity unless iCap could demonstrate that it could procure the funding needed to complete the project.

Shortly after filing the complaint, 134th Street Lofts recorded a lis pendens on the property in Clark County. iCap was in the process of replacing the Parkview Financial loan with a loan from a different lender, but the new lender declined to close the loan while the property was encumbered by the lis pendens. The new loan was scheduled to close when the final payment on the Parkview Financial loan was due, but because the new loan did not close as anticipated, iCap had to arrange for an emergency extension on the payment with Parkview Financial to avoid default and foreclosure on the property. iCap was required to pay just under $140,000 in fees to procure a one-month extension from Parkview Financial.

IV. PROCEDURAL HISTORY

iCap moved to cancel the lis pendens, arguing that the lis pendens was improper because 134th Street Lofts' claims did not affect title to real property. The trial court granted iCap's motion and canceled the lis pendens. The trial court also informed iCap that it had the right to move for damages, and costs and fees pursuant to RCW 4.28.328.

Shortly thereafter, iCap moved for partial summary judgment, arguing that it did not breach the duty of good faith and fair dealing because it was entitled to maintain a deed of trust on the property under the Settlement Agreement. The trial court granted iCap's motion for summary judgment and dismissed 134th Street Lofts' claims. The trial court ruled that iCap was entitled to move for attorney fees and costs as the prevailing party pursuant to a provision in the parties' Settlement Agreement.

iCap subsequently filed a motion for summary judgment on damages and fees related to the lis pendens, a motion for summary judgment regarding 134th Street Lofts' liability for breach of contract resulting from 134th Street Lofts' failure to adhere to its repayment and development schedules under the Settlement Agreement, and a motion for fees and costs as the prevailing party. The trial court granted iCap's motions for summary judgment and entered a judgment ordering that 134th Street Lofts pay iCap the principal sum of $139,977.42 under RCW 4.28.328(2) for wrongful recordation of the lis pendens. In addition, the trial court awarded iCap $41,624.43 in attorney fees and costs, of which $13,847 was awarded pursuant to RCW 4.28.328(2) for wrongful recordation of the lis pendens, and the remainder was awarded as reasonable fees and costs pursuant to the parties' Settlement Agreement.

134th Street Lofts appeals the order granting partial summary judgment, the order granting summary judgment on damages and fees related to the lis pendens, and the order granting iCap's motion for summary judgment on 134th Street Lofts' liability for breaching the Settlement Agreement.

DISCUSSION

I. ATTORNEY FEES FOR WRONGFUL RECORDATION OF LIS PENDENS

A. LEGAL PRINCIPLES

Under RCW 4.28.320, a party in an action affecting title to real property may file a notice, or lis pendens, with the county auditor regarding the pendency of the action. *Pendergrast v. Matichuk*, 189 Wn. App. 854, 867, 355 P.3d 1210 (2015). Filing a lis pendens serves two purposes. *Snohomish Reg'l Drug Task Force v. 414 Newberg Rd.*, 151 Wn. App. 743, 752, 214 P.3d 928 (2009). First, once a lis pendens is recorded, prospective purchasers and encumbrancers have constructive notice that title to the property is in dispute and that the record owner's interest is in question. *Id.* Second, on filing, the lis pendens "freeze[s] the status of the property in time," preventing a party to the underlying action from transferring their interest "because the cloud on the title follows the transfer." *Id.* As a result, once the lis pendens is recorded, any person or entity that subsequently acquires an interest in the property does so "subject to the property's ultimate disposition in the pending suit as that suit was filed." *Id.*

RCW 4.28.328(2) provides,

> A claimant in an action not affecting the title to real property against which the lis pendens was filed is liable to an aggrieved party who prevails on a motion to cancel the lis pendens, for actual damages caused by filing the lis pendens, and for reasonable attorneys' fees incurred in canceling the lis pendens.

7

RCW 4.28.328(3) presents an alternative means for recovering damages and attorney fees resulting from the filing of a lis pendens. This statute provides,

> Unless the claimant establishes a substantial justification for filing the lis pendens, a claimant is liable to an aggrieved party who prevails in defense of the action in which the lis pendens was filed for actual damages caused by filing the lis pendens, and in the court's discretion, reasonable attorneys' fees and costs incurred in defending the action.

RCW 4.28.328(3).

Washington courts have not established specific guiding criteria to aid in determining whether an action "affects title to real property" under RCW 4.28.328(2). However, in a case involving a lis pendens filed in an easement dispute, this court relied on persuasive authority from Arizona, which has a similar lis pendens law. *Schwab v. Seattle*, 64 Wn. App. 742, 748, 826 P.2d 1089 (1992). Arizona courts also consider whether the action affects title to real property when determining whether a lis pendens was wrongfully recorded. *Santa Fe Ridge Homeowners' Ass'n v. Bartschi*, 219 Ariz. 391, 395-96, 199 P.3d 646 (Ct. App. 2008).

In *Schawb*, this court adopted the Arizona courts' construction of Arizona's lis pendens law that considers an action affecting title to real property one that "involv[es] an adjudication of rights incident to title to real property." 64 Wn. App. at 748 (citing *Tucson Estates, Inc. v. Superior Court*, 151 Ariz. 600, 729 P.2d 954, 959 (Ct. App. 1986)). Applying this construction, this court held that an easement which grants a property owner a right to access another property is an action affecting a right incident to title. *Id.* at 749.

"[A] lawsuit affects a right incident to title if any judgment would expand, restrict, or burden a property owner's rights as bestowed by virtue of that title." *Santa Fe Ridge Homeowners' Ass'n*, 219 Ariz. at 396. Arizona courts have considered whether the judgment involved in a lawsuit

8

would bind future owners of the property or govern rights tied to ownership of the property. *Id.* at 397; *see also Tucson Estates*, 729 P.2d at 959 (holding that a lawsuit regarding an implied restrictive covenant pertaining to use of a golf course by mobile home residents implicated rights incident to title because determination of the dispute in favor of the residents would create a right to use the golf course that arose from ownership of the mobile home lots).

B. ANALYSIS

134th Street Lofts argues that the trial court wrongfully imposed attorney fees under RCW 4.28.328(2) because the action affects title to real property. 134th Street Lofts claims that title to real property is implicated in this case because the dispute involved control over the Project Entity, and the Project Entity has the "legal right to transfer, encumber, or enact any other title action for a property." Br. of Appellant at 11. 134th Street Lofts specifically limits its assignment of error to the trial court's imposition of $13,847 in attorney fees incurred by iCap in canceling the lis pendens. 134th Street Lofts does not also assign error to the trial court's imposition of nearly $140,000 in damages incurred as a result of the wrongful recordation of the lis pendens.[1]

iCap contends that 134th Street Lofts misapprehends the trial court's ruling and the distinction between RCW 4.28.328(3) and RCW 4.28.328(2). iCap asserts that 134th Street Lofts' argument is premised on whether it had substantial justification for filing the lis pendens, which

---

[1] Although 134th Street Lofts appeals from the trial court's order granting summary judgment on damages and fees related to the lis pendens, which includes both the $140,000 award for damages and $13,847 for attorney fees, it does not assign error or otherwise argue that the $140,000 award for damages was improperly awarded. If 134th Street Lofts prevailed on its theory that it did not wrongfully record the lis pendens, then the trial court would have also erred in imposing $140,000 in damages under the same statute for the same reason. It is not clear why 134th Street Lofts limited its assignment of error to the imposition of attorney fees.

would only be relevant if the trial court awarded fees under RCW 4.28.328(3). However, as iCap points out, the trial court actually awarded fees under RCW 4.28.328(2). Thus, the relevant question is whether the trial court properly imposed attorney fees under RCW 4.28.328(2).

iCap defends the trial court's decision to impose damages and attorney fees because title to the property was not at issue. iCap asserts that there is a critical distinction between control over the entity and title to the property, and that even if 134th Street Lofts was removed as manager and developer, 134th Street Lofts remained a member of the Project Entity as provided by the LLC Agreement and was still entitled to share in the proceeds of the development as a member.

134th Street Lofts' claim fails because regardless of the outcome of the lawsuit pertaining to management of the Project Entity, the Project Entity's rights as title owner are unaffected, and this action does not affect title to real property. That is, the trial court's judgment regarding whether 134th Street Lofts could continue to act as a manager and developer on behalf of the Project Entity would not result in expanding, restricting, or burdening the Project Entity's rights to the property "as bestowed by virtue of that title." *Santa Fe Ridge Homeowners' Ass'n*, 219 Ariz. at 396. The trial court's judgement does not bind future owners of the property, nor does it govern rights that are tied intrinsically to ownership of the property itself. *See id.*

134th Street Lofts' argument that the dispute in the underlying lawsuit affects title to real property because it concerns "the legal right to transfer, encumber, or enact any other title action for the property" (Br. of Appellant at 11) fails when considered in light of the purpose for filing a lis pendens. A party files a lis pendens to provide notice to prospective purchasers and encumbrancers of the property that the scope of the interest they intend to acquire or encumber is not settled and may change depending on ultimate disposition of the lawsuit. *Snohomish Reg'l*

*Drug Task Force*, 151 Wn. App. at 752. This makes sense, given that "[a] grantor of property can convey no greater title or interest than the grantor has in the property." *Firth v. Lu*, 146 Wn.2d 608, 615, 49 P.3d 117 (2002).

Here, the Project Entity owns the property, and thus the Project Entity, not iCap or 134th Street Lofts, sells, refinances, or otherwise conveys the property. The manager merely acts as an agent on behalf of the Project Entity, with decision-making authority to bind the Project Entity and exercise the powers of the Project Entity. Regardless of which entity, iCap or 134th Street Lofts, acts as manager and makes the decision to convey the property, the actual interest conveyed is unaffected by the identity of the decision-maker. There is no reason to notify prospective purchasers or encumbrancers when the identity of the agent changes because the record owner of the property remains the same and has the same interest to convey.

Accordingly, the action does not affect title to real property and the trial court properly awarded iCap attorney fees incurred in canceling the lis pendens pursuant to RCW 4.28.328(2).

## II. THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

### A. SUMMARY JUDGMENT STANDARD

We review an order granting summary judgment de novo and consider all the evidence and reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Id.* "'A material fact is one that affects the outcome of the litigation.'" *Morgan v. Kingen*, 166 Wn.2d 526, 533, 210 P.3d 995 (2009) (quoting *Owen v. Burlington N. & Santa Fe R.R.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005)).

11

B. LEGAL PRINCIPLES

An implied duty of good faith and fair dealing exists in every contract. *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112, 323 P.3d 1036 (2014). This duty obligates both parties to a contract to cooperate with one another so that each party may obtain the full benefit of performance. *Id.* It compels the parties to a contract to maintain "'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Edmonson v. Popchoi*, 172 Wn.2d 272, 280, 256 P.3d 1223 (2011) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a (AM. LAW INST. 1981)).

The duty of good faith and fair dealing does not impose a "free-floating obligation" on the parties to a contract. *Rekhter*, 180 Wn.2d at 113. Instead, the duty must arise "'in relation to performance of a specific contract term.'" *Keystone Land & Dev. Co., v. Xerox Corp.*, 152 Wn.2d 171, 177, 94 P.3d 945 (2004) (quoting *Badgett v. Security State Bank*, 116 Wn.2d 563, 570, 807 P.2d 356 (1991)). This duty cannot add or contradict a contract's express terms. *Rekhter*, 180 Wn.2d at 113. Consequently, a party is not obligated to accept a material change to the terms of its contract to avoid breach. *Badgett*, 116 Wn.2d at 569. A party does not breach the duty of good faith when it "simply stands on its rights to require performance of a contract according to its terms." *Id.* at 570.

In interpreting contractual provisions, Washington courts follow the "objective manifestation theory of contracts." *Hearst Commc'ns Inc., v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). This approach requires courts construing contractual provisions to determine the parties' intent by focusing on their "objective manifestations of the agreement" corresponding with the "reasonable meaning of the words used." *Id.* at 503. The unexpressed,

subjective intent of the parties in entering the agreement "is generally irrelevant if the intent can be determined from the actual words used." *Id.* at 504. Unless clearly designated otherwise, words in a contract are given their "ordinary, usual, and popular meaning." *Id.*

C. ANALYSIS

134th Street Lofts argues that summary judgment was improper because iCap breached the duty of good faith and fair dealing, preventing each party from enjoying the benefit of performance, when iCap did not remove the deed of trust it held on the property immediately upon 134th Street Lofts' request. 134th Street Lofts asserts that once Parkview Financial indicated that it would withhold further disbursement of funds, both 134th Street Lofts and iCap had new responsibilities arising pursuant to the duty of good faith and fair dealing to timely get the project on track. 134th Street Lofts acknowledges that it had a responsibility to obtain new financing that would not conflict with iCap's deed of trust, but it claims iCap had a concomitant duty to remove the deed of trust while 134th Street Lofts secured a new construction loan.

134th Street Lofts contends that iCap's delay of three weeks constituted a breach of the duty of good faith and fair dealing because although the payment secured by the deed of trust was not due to iCap for many months, 134th Street Lofts required funding immediately in order to pay sub-contractors and purchase supplies. By failing to timely remove the deed of trust, 134th Street Lofts contends, iCap undermined the Project Entity's ability to adhere to the development schedule, breaching Settlement Agreement terms and the duty of good faith and fair dealing arising from those terms.

iCap responds that the trial court properly granted summary judgment because iCap did not breach the implied duty of good faith and fair dealing when it waited three weeks to remove

the deed of trust against the property. iCap contends that 134th Street Lofts' claim improperly imposes a free-floating duty of good faith and fair dealing that was not attached to any term in the Settlement Agreement. iCap further argues that it did not have a duty of good faith and fair dealing that required it to forfeit an express right guaranteed under the Settlement Agreement.

iCap was entitled to summary judgment because 134th Street Lofts' framing of iCap's duty in this case improperly (1) imposes a material change to existing terms in the Settlement Agreement and (2) creates new obligations beyond those contained in the contract. Consequently, because 134th Street Lofts cannot show that it was denied the benefit of iCap's performance *under the existing agreement*, iCap did not breach the implied duty of good faith and fair dealing.

Here, iCap did not breach the implied duty of good faith and fair dealing as alleged by 134th Street Lofts because it was entitled to encumber the property with the deed of trust under the express terms of its Settlement Agreement. iCap was not required to accept a material change to the terms of its contract to fulfill its obligation to act in good faith. *See Badgett*, 116 Wn.2d at 569. "As a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms." *Id.* at 570. But 134th Street Lofts argues that iCap had a duty to *immediately* forfeit its contractual right to secure the promissory note until 134th Street Lofts was able to procure alternate financing that would permit an additional encumbrance on the property. In effect, 134th Street Lofts suggests that iCap was compelled to quickly accept a worse position than it bargained for, and that both parties had agreed to, because the three-week delay in removing the deed of trust prevented 134th Street Lofts from meeting its own contractual obligations. This position is untenable because the duty of good faith and fair dealing cannot contradict express terms in a contract. *Rekhter*, 180 Wn.2d at 113.

14

Moreover, iCap did not breach its duty of good faith and fair dealing because there was no contract term obligating the specific performance that 134th Street Lofts asserts iCap did not carry out in good faith. 134th Street Lofts' claim fails because the duty of good faith and fair dealing is derivative rather than free-standing; it must arise in relation to a party's performance of its contractual obligations. *Badgett*, 116 Wn.2d at 569. Although 134th Street Lofts asserts that iCap's obligations to act in good faith by immediately removing the deed of trust comes from paragraphs 6(b) and 16 of the Settlement Agreement, it interprets these contractual provisions in a manner that expands the scope of their plain meaning. This argument fails because neither term creates the obligation suggested by 134th Street Lofts.

First, paragraph 6(b) of the Settlement Agreement describes the procedures for requesting draws of construction loan funds, and it requires both 134th Street Lofts and iCap to agree to the draw request. This provision states that iCap shall review draw requests submitted by 134th Street Lofts within two days of receiving them, and that it should not unreasonably withhold, delay, or condition its approval of the draw requests. 134th Street Lofts interprets this provision to require "immediate action on funding concerns" (Br. of Appellant at 13), but this reading of the contract provision is overbroad. This provision does not compel iCap to forgo rights secured under the Settlement Agreement in the event that the lender declines to disburse funds. Nor does this case involve an allegation that iCap failed to act in good faith because it withheld, delayed, or conditioned its approval of 134th Street Lofts' request to draw funds from the construction loan. This paragraph, therefore, cannot be construed to give rise to iCap's good faith duty to remove the deed of trust immediately on request.

15

Next, paragraph 16 of the Settlement Agreement contains a general "[f]urther [a]ssurances" clause, which provides that the parties agree to execute any further documents or take further actions "as may be reasonable and appropriate in order to carry out the purpose and intent of this agreement." CP at 166. Applying the objective manifestation approach to contract interpretation, the plain language of this paragraph indicates that the parties meant it to serve as a catch-all provision providing for both parties' continued adherence toward carrying out the objective of their agreement. *See Hearst*, 154 Wn.2d at 504. In paragraph 8, the Settlement Agreement expressly provides for creation of a promissory note, secured by the deed of trust. Therefore, securing the promissory note in favor of iCap with a deed of trust constitutes one goal inherent to the Settlement Agreement. Nothing in the plain language of paragraph 16 indicates that by requiring the parties to take reasonable and appropriate further actions as may be necessary, the parties intended that provision to compel either party to immediately forfeit rights guaranteed by other express terms.

The implied duty of good faith and fair dealing protects a party's justified expectations in entering the agreement. *Edmonson*, 172 Wn.2d at 280. It exists to ensure that the parties receive the full benefit of performance as provided by the contract. *Rekhter*, 180 Wn.2d at 112. But here, 134th Street Lofts could not fairly expect, in entering the Settlement Agreement, that iCap should swiftly accept a substantial reduction in its rights under the contract with no return benefit. Nor does the record reflect that iCap engaged in any action that deprived 134th Street Lofts of the full benefit of iCap's performance of its obligations under the Settlement Agreement. Taken together, there is no evidence that iCap violated its duty of good faith and fair dealing and iCap was entitled to summary judgment as a matter of law.

16

ATTORNEY FEES

iCap requests attorney fees on appeal under RAP 18.1(a). It claims that it is entitled to fees under RCW 4.28.328, RCW 4.84.330, and section 23 of its Settlement Agreement.

iCap was awarded fees by the trial court under RCW 4.28.328(2), which provides reasonable attorney's fees incurred in canceling a lis pendens. This court was not involved in canceling the lis pendens, but only reviewed the trial court's decision to award fees pursuant to this statute. We decline to award any additional fees on appeal under this statute.

For any action on a contract,

> where such contract . . . specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.

RCW 4.84.330. Section 23 of the Settlement Agreement provides for attorney fees and costs and states that "should a Party initiate litigation to enforce the terms of this Agreement, the prevailing party shall be entitled to its reasonable attorney fees and costs." CP at 168.

In filing the lawsuit against iCap, 134th Street Lofts sought damages for iCap's alleged breach of the duty of good faith and fair dealing. This type of claim necessarily arises from a contract and therefore constitutes litigation initiated to enforce the terms of an agreement within the meaning of RCW 4.84.330. We therefore award reasonable attorney fees in favor of iCap in an amount to be determined by the commissioner of this court.

CONCLUSION

We hold that the trial court did not err in awarding iCap attorney fees incurred in canceling the lis pendens because the action did not affect title to real property. We also hold that iCap was

entitled to summary judgment because there was no genuine dispute of material fact that iCap did not breach the duty of good faith and fair dealing when it waited three weeks before removing the deed of trust. We grant iCap's request for attorney fees on appeal.

Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

LEE, C.J.

GLASGOW, J.